TRUMP MANUFACTURING CO. *v.* VILLAGE OF BUCHANAN.

1. VILLAGES—WATERWORKS—POWERS OF COUNCIL—CONTRACTS OF
   PURCHASE—CHARTER LIMITATIONS—PRESUMPTIONS.

   Under the general statute for the incorporation of villages,
   which empowers the common council to raise by general tax
   a sum, not exceeding in any one year one and one-fourth per
   cent. of the assessed valuation (1 How. Stat. § 2923), and
   which permits it to raise and expend, in making repairs or
   alterations upon waterworks previously constructed, such
   sum, not exceeding in any one year one-half of one per
   cent., as it may see fit, without submitting the question to
   the electors (3 How. Stat. § 2973), provided such sum shall
   be included in the one and one-fourth per cent. limitation,
   *it seems* that an indebtedness not exceeding one-half of
   one per cent., incurred by the common council for water-
   works appliances, would, as against the objection that,
   together with the amount raised for the general fund, it
   exceeded one and one-fourth per cent., be presumed, in the
   absence of evidence that the general fund had been otherwise
   appropriated, to be payable out of such fund, and therefore
   to be valid.

2. SAME—ANTICIPATING REVENUES.

   The council, however, in view of the provision (1 How.
   Stat. § 2957) that "no loans shall be made by the council, or
   by its authority, in any year, exceeding the amounts pre-
   scribed" by the act, has no power to anticipate the revenues
   of succeeding years by executing a contract of purchase
   upon terms of credit which make the purchase price payable
   beyond the current fiscal year.

3. SAME.

   And it cannot be presumed, in order to sustain such a con-
   tract, that the council intended to raise the amount during
   the current year, and set it aside to meet the payment when
   due.

Error to Berrien; Coolidge, J.   Submitted October 6,
1897.   Decided March 15, 1898.

*Assumpsit* by the Trump Manufacturing Company

against the village of Buchanan to recover the purchase price of waterworks appliances. From a judgment for defendant, plaintiff brings error. Affirmed.

*Howard, Roos & Howard*, for appellant.

*A. A. Worthington* and *Edward Bacon*, for appellee.

LONG, J. This action was brought to recover the amount of $815.10 and interest, claimed to be due plaintiff upon a written contract for the purchase by defendant of two penstocks for waterworks purposes. The cause was heard before the court without a jury, and findings made. Judgment was entered in favor of defendant.

It substantially appears from the findings that the plaintiff is the assignee of W. C. Leffel & Co., and is entitled to sue in its own name on this contract. The defendant village was organized under the general law. In September, 1894, Leffel & Co. made a proposition in writing to sell to the defendant the two penstocks, and set the same, for the sum of $843.10, terms of payment to be agreed upon. The president and clerk of the village wrote in answer to this proposition that it was accepted, and added: "Will at once correspond with your company as to our best terms of payment." At a meeting of the village council had October 1, 1894, a resolution was passed accepting the proposition of Leffel & Co., with the following proviso: "That they furnish the same on one year's time, at 5 per cent. interest." On October 5th the clerk of the village sent a copy of this resolution to Leffel & Co., who answered on the 15th, acknowledging the receipt of it, and agreeing to the terms proposed, and stating: "We are at work upon the job, and will rush it through as rapidly as possible." The clerk of the village acknowledged receipt of this letter. The work was completed, and sent forward to the defendant. The agent of Leffel & Co. was at Buchanan when the penstocks came, and he was directed by the president of the village and one of the trustees to take the penstocks to the dam across the St.

Joseph river, in the village, and place the same in the stone wall which separated the race from the river. They were set, and the village authorities caused them to be cemented in at the expense of the village. On January 25, 1895, the clerk, at the request of the common council, wrote Leffel & Co. as to what would be the best figure cash down, instead of note, which would be received in payment for the penstocks. In answer to this, Leffel & Co. wrote that it would take $830.78 if paid at the next meeting of the council. This was not paid, and no further action was taken. On April 25th Leffel & Co. presented its bill to the council. The legal name of Leffel & Co. was changed to the Trump Manufacturing Company, the plaintiff here, and in November it presented claim to the defendant. The common council thereupon, at a meeting duly held, took action upon the matter, and resolved:

"That the alleged contract, by reason of want of authority, was never obligatory on said municipal corporation, and has ever been inoperative and of no legal effect; that it never received said penstocks, and has never received any benefit; that they have never been annexed to any real estate, so as to become a part thereof, and are not in possession of the village."

The proposition is then made in the resolution that the plaintiff receive them back, and that, if so accepted, the village will load them on cars, with freight prepaid to Springfield, Ohio. This proposition was refused by the plaintiff, and suit was commenced. The court further found:

"(10) That the assessed valuation of the real and personal property of the village for the year 1894, as shown by the assessment roll of that year, was the sum of $562,000, and that the village council duly and legally voted to raise for the year 1894 twelve mills on the dollar for the general fund, and three mills on the dollar for the highway fund; that, for the year 1895, the assessed valuation of the real and personal property of the village, as shown by the assessment roll, was the sum of $565,000, and that the village council duly and legally voted to raise for the year

1895 twelve and one-half mills on the dollar for the general fund, and two and one-half mills on the dollar for the highway fund.

"(11) That the common council undertook to purchase the penstocks in question under a supposition that the proposition for purchasing the horse power of the Buchanan Power & Electric Company, and operating waterworks by power obtained at the dam, would receive a majority of the votes of the taxpayers, and that the agent of the plaintiff had knowledge of the fact that the penstocks would be of no use or benefit to the defendant unless a new system or radical change in the existing waterworks should be introduced, and that a meeting of the taxpayers to determine whether such new system or change should be introduced was proposed.

"(12) That on October 1, 1894, and for some time prior thereto, the village of Buchanan had operated a system of waterworks, but that they were located about three-fourths of a mile distant from the place where the penstocks were placed.

"(13) That on December 21, 1894, a resolution was passed by the common council, submitting to the vote of the taxpayers of said village a proposition for purchasing 150 horse power of the Buchanan Power & Electric Company, at an expense of several thousand dollars; that it was contemplated, among other things, that pumps to be used in the waterworks system of said village should be operated by the power thus obtained, and that water-wheels would be placed at the dam on the St. Joseph river, inclosed by the penstocks in question, to be used in connection with the operation of said waterworks system; that said proposition, at the meeting of the taxpayers on January 4, 1895, was defeated, and the plan of operating the waterworks from power obtained at the dam was abandoned."

As conclusions of law, embracing therewith some findings of fact above recited, the court found as follows:

"(1) That in the year 1894 the common council of the village of Buchanan had the legal authority to raise by taxation and loan a sum not exceeding one and one-quarter per cent. on the dollar of the assessed valuation of the property in said village; that such assessed valuation amounted to the sum of $562,000; that the amount, therefore, which said council might lawfully raise by levy and

pledge, was $7,025; that the council, in the spring of 1894, levied a tax of twelve mills on the dollar for the general fund, which made a total assessment of $6,744; that thereafter the common council, during the fiscal year, could not legally increase the indebtedness of the said village more than $216 without the consent of the taxpayers, at a meeting properly called; that the resolution of said council adopted October 1, 1894, providing for the purchase of the penstocks in question, attempted to create an indebtedness of $843.10 against said village, to be paid in one year; that this sum was intended to be an additional burden on the taxpayers of said village, in addition to the amount of the general levy, since it was not to be paid out of the appropriations made by the common council to meet the expenses of the year, but was to be paid in the middle of the next fiscal year; that the purchase price of the penstocks was not embraced or intended to be embraced among the liabilities and expenses contemplated by the general levy, or by the appropriations made out of the general fund for the year; that the resolution of October 1, 1894, above recited, and all proceedings thereunder, were *ultra vires;* and that, as the alleged contract is not susceptible of apportionment, it is wholly void, and the defendant is not liable thereupon.

"(2) That the acts of the officers and members of the common council in regard to the reception and placing of the penstocks did not constitute an acceptance or use of the goods by the defendant.

"(3) That the village of Buchanan never accepted nor used the said penstocks, and is therefore not estopped from contesting the claim of the plaintiff.

"(4) That the penstocks having been placed on property not in the ownership, possession, or control of the defendant, and a spot quite remote from the location of any existing waterworks, and the uses to which such penstocks were naturally to be applied being foreign to any needs or uses of any existing waterworks, and such facts having been known by the plaintiff, there was never any actual delivery to the defendant of the goods in question.

"(5) That no contract to pay for the goods on a *quantum meruit* can be implied in this case.

"(6) That the plaintiff is not entitled to recover; and judgment will therefore be rendered in favor of the defendant, and against plaintiff, for costs of suit to be taxed."

Counsel for plaintiff requested the court to find that the

proposition made by Leffel & Co. was accepted by the village, and by such acceptance became a legal and binding contract upon both parties; that the plaintiff fulfilled its part of the contract, and the village had accepted the property delivered, and that the contract was within its power to make; that the plaintiff was entitled to recover the contract price. These findings were refused. Plaintiff took exception to such refusal, as well as to the findings of law made by the court. Plaintiff also excepted to the eleventh finding of fact, on the ground that there was no evidence to support it.

The general law, under which the defendant village was reincorporated, provides:

"The council of any village subject to the provisions of this act shall have authority to raise by general tax upon all the real and personal property liable to taxation in said village (exclusive of taxes for highway and street purposes) such sum, not exceeding in any one year one and one-fourth of one per cent. of the assessed value of such property, as they shall deem necessary," etc. 1 How. Stat. § 2923.

Section 2959 of the statute provides:

"The council may purchase and provide suitable fire engines and apparatus for the extinguishment of fires; and may sink wells and construct cisterns and reservoirs in the streets, public grounds, and other suitable places in the village, and make all necessary provisions for a convenient supply of water for the use of the department."

From these provisions of the charter it is apparent that the common council had the power to purchase the penstocks in question, provided that the purchase price did not exceed the amount which the council was authorized to raise without the vote of the taxpayers. This charter, which was passed in 1879, was amended in 1887 (3 How. Stat. § 2973), which amendment provides that—

"After waterworks have been constructed in a village by virtue of any of the provisions of any law of this State, the council may then raise and expend in making repairs or alterations, or in extending such works, such

sum as it may see fit, without submitting the question to the electors of the village: *Provided*, the sum to be so expended in any one year shall not exceed the sum of one-half of one per cent. of the assessed valuation of the village: *And provided, also*, the sum to be raised for such purpose shall be included in the amount which, by the provisions of section 1, chapter 9, of ıthis act, the council is authorized to raise."

That section provides, as we have seen, that the council may raise, exclusive of taxes for highways and streets, in any one year one and one-fourth of 1 per cent. of the assessed valuation, etc.

It is conceded that the village, at the time this contract was made, had already in operation a system of water-works operated by steam power. From the findings of the court below, it appears that the assessed valuation of the village in the year 1894 was $562,000, and in the year 1895 $565,000. The contract price for the penstocks was $843.10. This does not exceed the one-half of 1 per cent. of the assessed valuation for each year. In the year 1894 there was ordered to be raised by the council for the general fund 12 mills on the dollar, which would be $6,744; in the year 1895, 12½ mills on the dollar, or $7,062.50. Thus, it appears that the council brought itself within both the provisos contained in section 2973, 3 How. Stat., above quoted. The only appropriation which is shown of this fund is the resolution to raise the amounts, in which 12 mills on the dollar was appropriated in 1894 to the general fund, and in the year 1895 12½ mills on the dollar to the same fund. If, therefore, the council had purchased these goods to be paid for within the same fiscal year in which they were bought, the council would have had the right to pay for them out of the general fund.

But it is contended by counsel for defendant that, inasmuch as the council of the village purchased on one year's time, this would run the payment into the succeeding year, and it would therefore be void, because the council could not anticipate the fund in advance of the year in which the contract was made. In *Putnam* v. *City of*

*Grand Rapids*, 58 Mich. 416, it appears that the city entered into a contract with an electric light company whereby it was to have 25 towers put up in various places, and electric lights furnished for five years in the times and manner specified, at $26,000 a year, at the end of which period all the fixed property was to belong to the city, if desired. A bill was filed to restrain the council from carrying out this contract. The bill was sustained and the relief granted. But it was said that the decision was placed entirely on the restrictions of the charter, and not upon any general incapacity had the charter been silent; and that—

"In the face of the charter provision, the array of authorities allowing time contracts by cities, which is certainly very respectable, does not apply."

We must therefore look to the village act to determine whether any restrictions are there imposed upon the village council to enter into this contract, under which the payments were to be made in the future. The only authority in the council to make a contract for the waterworks system is contained in section 2973, 3 How. Stat., above quoted. This section does not authorize the council to incur an indebtedness to be paid in a future year, but provides that it may raise such amount in any one year. Section 2957, 1 How. Stat., provides that " no loans shall be made by the council, or by its authority, in any year, exceeding the amounts prescribed in this act." But it is contended by counsel for plaintiff that it was held in *Spitzer* v. *Village of Blanchard*, 82 Mich. 242, that a village organized under this act could not incur an indebtedness to *exceed* 1¼ per cent. of its assessed valuation, and that this statute was not construed as a restriction upon the village to incur an indebtedness to that extent. In that case the question was not presented whether the village had the power to incur an indebtedness to be paid in the future, but the question there considered was whether the bonds sued upon were in an amount beyond the power of the council to issue. It was held that the council exceeded

its power in issuing them.  The question here presented
was not squarely in issue there.  We think that section
2957 must be considered as a restriction upon the council
to enter into a contract payable in the future.  *Newaygo
County Manfg. Co.* v. *Echtinaw*, 81 Mich. 416.  If
plaintiff's contention could be sustained, then the coun-
cil could enter into a contract for waterworks repairs
to the amount of one-half of 1 per cent. in any one year,
and at the same time incur an indebtedness payable from
year to year, extending over several years in like manner.
While the council may readily estimate the amount it may
raise for waterworks during any current year, so that the
total amount raised for general purposes shall not exceed
$1\frac{1}{4}$ per cent. of the assessed valuation, yet it is apparent
that no estimate could be made for the following years, so
that the total amount should not exceed that sum.

But counsel for plaintiff contend that, the amount being
within the power of the council to raise in the year that
the contract was made, the contract is not void by reason
of the fact that the payment under it was to be made the
following year, for it must be presumed that the council
would raise the fund, and set it aside to meet the payment
when due.  It appears, however, that the penstocks were
not to be paid for that year, but the village was to have
one year's time, with interest at 5 per cent.  It cannot be
presumed, therefore, that the council intended to raise the
amount the year the contract was made, but intended it as
a time contract, the fund to meet it not to be raised until
the succeeding year.  We think the council has no such
power under the charter.

The judgment is affirmed.

The other Justices concurred.