## DICKINSON v. SALT LAKE CITY et al.

No. 3624.   Decided February 11, 1921.   (195 Pac. 1110.)

1. MUNICIPAL CORPORATIONS—OBJECTS OF BOND ISSUE HELD TO BE "CORPORATE PURPOSES." The objects of a proposed bond issue, as stated in the resolution of the city commissioners, to defray contingent expenses, purchase water rights, construct waterworks, improve and repair streets and sidewalks, sewers, and drains, construct and maintain bathhouses, and maintain the public library and reading room, and to pay interest on bonds theretofore issued, are plainly "corporate purposes" for which the commissioners can borrow money on the credit of the city under Comp. Laws 1917, § 570x6.

2. MUNICIPAL CORPORATIONS—CAN BORROW MONEY TO ANTICIPATE REVENUES FOR CURRENT YEAR. Under Const. art. 14, § 3, forbidding a city to incur debt in excess of the taxes for the current year except by vote of the electors, Comp. Laws 1917, § 570x6, authorizing the city commissioners to borrow money to the extent allowed by the Constitution, and in view of Const. art. 13, § 1, and Comp. Laws 1917, § 670, fixing the fiscal year, and sections 6102, 6103, and 6015, providing for the levy and collection of taxes under which the taxes do not become due until 8½ months after the beginning of the fiscal year, the city commissioners are authorized to borrow money to conduct the government of the city and conduct its business in anticipation of the revenues for the current fiscal year so long as the amount to be borrowed does not exceed the debt limit fixed by Const. art. 14, § 4, or the taxes for the current year.[1]

<hr>

[1] *Muir* v. *Murray City*, 55 Utah 368, 186 Pac. 433.

3.  MUNICIPAL CORPORATIONS—CAN ISSUE BONDS FOR MONEY BOR-
    ROWED IN ANTICIPATION OF REVENUES.  Under Comp. Laws 1917,
    § 570x6, authorizing city commissioners to borrow money and
    issue warrants and bonds therefor to the extent allowed by
    the Constitution and laws of the state, the commissioners can
    issue bonds payable at the end of the fiscal year for the money
    borrowed by them, in anticipation of the revenues from taxa-
    tion during that year.

Original proceedings by S. S. Dickinson against Salt Lake City and others for a writ prohibiting the City from issuing certain bonds.

DEMURRER TO COMPLAINT SUSTAINED, and COMPLAINT DIS-MISSED.

*C. W. Boyd,* of Salt Lake City, for petitioner.

*W. H. Folland,* City Atty., of Salt Lake City *(C. C. Dey,* of Salt Lake City, of counsel), for defendant.

GIDEON, J.

Plaintiff, a resident and taxpayer of defendant city, seeks a writ prohibiting said city and the other defendants, commissioners of Salt Lake City, from issuing and offering for sale, or selling, certain negotiable bonds authorized by a resolution of the commissioners of said city. From the affidavit for the writ, together with the exhibits made a part thereof, the following facts appear  The defendant Salt Lake City is a city of the first class. The other defendants are the duly elected, qualified, and acting commissioners of said city, and were such during the month of January, 1921. In January, 1921, at a regular meeting of said commissioners, a resolution was unanimously adopted authorizing the city to borrow the sum of $1,500,000, and pledge the credit of the city for the payment of the same and to issue negotiable bonds for said amount in denominations of $5,000 each. The said bonds

are to bear interest at the rate of 6 per cent. per annum and are to become due and payable December 31, 1921. The resolution recites:

"That whereas, there is an immediate and pressing need of raising funds to defray contingent expenses, to purchase water sources, streams, and the land upon which streams are appropriated, and canals, to construct waterworks and supply water for irrigation and other purposes, to open, improve, and repair streets and sidewalks, to construct and repair sewers and drains, to construct and maintain bathhouses, to maintain the public library and reading room, to pay interest on bonds heretofore issued, and constitute a sinking fund for the payment of the principal on bonds heretofore issued, to defray current expenses, and for general corporate purposes."

The form of bonds proposed to be issued is made a part of the petition, and in said bonds it is provided:

"The board of commissioners shall levy in the year 1921 a sufficient tax to pay the principal and interest on this bond as the same shall fall due, and this bond is issued in anticipation of the payment of such taxes for the year 1921."

"It is hereby certified, recited, and declared that the entire indebtedness of said city hereby incurred is not in excess of the taxes of said city to be levied for the current year, 1921, and that said indebtedness was and is contracted for the purposes for which said taxes are to be levied."

It also appears from an exhibit attached to said petition that the taxable property within the said defendant city, according to the assessment for the year 1920, is $205,939,286; also that the tax levy in said year 1920 was $2,252,975.79, and the total revenue from all sources for said year was $2,901,-808.16; that the estimated expenses for the current year 1921 will be $2,879,494.24. It further appears that the estimated revenue from the general taxes for the year 1921, and from other sources for said year, will be $2,900,475.79; that the total bonded indebtedness of the city, exclusive of the $1,500,-000 bonds proposed to be issued, is $6,000,000. All of the $6,000,000 bonds were authorized by vote of the qualified electors of said city.

To the petition or affidavit the defendants have filed a general demurrer, and the matter, on that state of the record, is submitted to this court for determination.

There are three general questions raised by the demurrer which may be stated in the language of the brief of defendants as follows:

"(1) Has the board of commissioners the power to borrow money and to issue, negotiate, sell, dispose of, and deliver negotiable bonds for the payment of which, principal and interest, the full faith and credit and taxing power of the city is pledged in anticipation of taxes for the current year and without authorization by vote of the qualified voters?   (2) If such authority is vested in the city, acting through its board of commissioners, can it be exercised at this time, or must it be deferred until after the tax levy has been made?   (3) Whether the city has power to borrow money and issue such bonds without there being a separate borrowing for each particular purpose, together with an itemized and separate account."

Article 14, § 4, of the state Constitution provides that no city shall become indebted in an amount, including existing indebtedness, exceeding 4 per cent. of the value of the taxable property therein, provided that cities of the first and second class, when authorized as provided by section 3 of that article, may be allowed to incur a larger indebtedness not to exceed 4 per cent. for supplying such city with water, artificial light, or sewers.

It is contended, and it so appears, that the proposed issue of bonds by the defendant city is not in excess, including prior existing debts, of the debt limit fixed by the Constitution.   We are therefore not called upon to consider or determine whether the indebtedness proposed is a debt within the meaning of the foregoing constitutional provision.

Article 14, § 3, of the Constitution provides:

"No debt in excess of the taxes for the current year shall be created by any * * * city * * * unless the proposition to create such debt shall have been submitted to a vote" of the qualified electors, etc.

The authority to incur the proposed indebtedness is claimed on the part of the defendants by the provisions of Comp. Laws Utah 1917, §§ 570 and 570x6, which read as follows:

"570. The boards of commissioners and city councils of cities shall have the powers in the following sections enumerated: * * *

"570x6. To borrow money on the credit of the corporation for

corporate purposes in the manner and to the extent allowed by the Constitution and the laws, and to issue warrants and bonds therefor, in such amounts and forms and on such conditions as the council shall determine. The council shall provide for the payment of interest on such bonds as the same shall become due and for a sinking fund for the payment of the principal thereof, within twenty years after issuing the same."

Section 570x2 reads:

"To appropriate money for corporate purposes only, and provide for payment of debts and expenses of the corporation: * * * Provided, that it shall be deemed a corporate purpose to appropriate money for any purposes which, in the judgment of the board of commissioners or city council, will provide for the safety, preserve the health, promote the prosperity, and improve the morals, peace, order, comfort, and convenience of the inhabitants of such city."

The evident purpose of the Constitution makers, expressed in section 3 of article 14, is that municipalities shall keep within the year's income in the operation of their business; in other words, "pay as they go," and not incur any indebtedness outside of the current taxes and other revenue of that year.

The facts appearing in the petition and exhibits establish beyond controversy that the proposed indebtedness is not in excess of the revenue for the year 1921. Nor is the total of the amount, considered in connection with the pre-existing bonds, in excess of the indebtedness allowed to cities under section 4 of article 14 of the Constitution. Neither do we think that it can be seriously questioned that the objects for which the money is to be borrowed are not included in the general expression "corporate purposes." It is concededly the duty of the city officials to repair streets, to construct sewers when necessary, to acquire water and water rights and water systems for the benefit of the inhabitants, and to do any and all the things mentioned in the resolution. The fiscal year of all cities in this state begins on January 1st and ends December 31st of each year. Const. art. 13, § 1; Comp. Laws Utah 1917, § 670. A city, town, or county is given authority to levy, by ordinance or resolution, on the real and personal property within such city, town, or county

a tax not to exceed 5 mills on the dollar of its assessed valua-
tion to defray contingent expenses, and for other purposes,
mentioned in the statutes an additional 8½ mills.   Comp.
Laws Utah 1917, §§ 6102, 6103.   Cities of the first class are
given the right to levy an additional tax of one-third of one
mill on the dollar to establish and maintain public libraries.
There are other provisions relating to the power of city com-
missioners to levy taxes for special purposes, but those are
not material to the determination of the questions presented
in this case.   Taxes are levied during the month of July of
each year.   They become due on the third Monday in Septem-
ber of each year, and are delinquent on the 30th day of No-
vember of each year.   Comp. Laws Utah 1917, § 6015, as
amended by chapter 119, Laws Utah 1919.

Section 570x6, supra, would seem to be an express grant
authorizing the city commissioners, whenever in their judg-
ment necessity exists or that the best interests of the city de-
mands such action, to borrow and pledge the credit of the
city for money to carry on and conduct the corporate busi-
ness of such municipality and to repay the same out of the
revenue for that fiscal year.   Manifestly it is the duty of the
commissioners to maintain a police force, to keep the city's
streets and thoroughfares clean, to make needed repairs at
all times and at all seasons of the year not only in the streets,
but in the sewers and water mains.   To make such repairs
and maintain the peace of the city, it is essential that means
for the payment of the same be in some way in the hands
of the city officers.   The power to levy a tax to raise the neces-
sary funds to pay the running expenses of the city is ex-
pressly given in the statute above mentioned.   It is the duty
of the commissioners to make such levy, and the presumption
is that public officials do their duty, and any failure on the
part of such officials could be remedied by proceedings in
court.   The whole scheme of taxation in this state would seem
to indicate that the Legislature in granting the authority to
borrow money for the purposes mentioned in section 570x6,
supra, recognized that a municipality might find itself in just
the position that the defendant city is in.   Taxes levied and

collected in any fiscal year should be (and usually are all) used in paying the running expenses of such fiscal year. As no taxes are due until the third Monday in September, there must, of necessity, be a period of some 8½ months of the fiscal year when none of the general taxes of that year are available for use in paying the running expenses of the municipality. Either, therefore, the city officers must see to it that sufficient funds are carried over from the preceding year to pay the running expenses of the city for the first 8½ months, or the city must borrow the necessary money to pay such expenses or attempt to run the city without funds; in other words, debts in some form must be incurred on the anticipated revenues to be later collected. In our judgment, the opinion of this court in the recent case of *Muir* v. *Murray City*, 55 Utah, 368, 186 Pac. 433, is decisive of the question presented. True, in that case it does not appear from the opinion that the indebtedness was incurred prior to the date of the levying of the taxes for that year, but it does appear from the record on appeal that the indebtedness was incurred in the month of March. The city was held liable, as it did not appear that the debt was in excess of the revenue of that year. Bearing on that particular question, this court said:

"The contention of the city that it had no power to create the debt in question on the ground that it exceeded the limit fixed by the constitutional provision quoted should not prevail in the absence of proof that the debt was in excess of the potential revenues for the current year from whatever source the revenue was legitimately obtainable. Having failed to make such proof its contention in this regard is without merit."

The statute seems to give the commissioners power to issue evidence of such indebtedness by the issuance of bonds or such other evidences as may best meet the needs of the city. So long as the proposed indebtedness is within the potential revenue of the city for the current year, we are unable to see any reason or lack of authority on the part of the city commissioners to create such indebtedness. Any failure on the part of the city authorities to levy a tax necessary to repay such indebtedness could not defeat the indebtedness or

Appeal from Seventh District

render it any less a legal and binding obligation against the city.  *Southern Bitulithic Co.* v. *Detreville,* 156 Ky. 513, 161 S. W. 560.  See, also, *Anderson* v. *International School Dist. No. 5,* 32 N. D. 413, 156 N. W. 54, L. R. A. 1917E, 428, Ann. Cas. 1918A, 506, note, 37 L. R. A. (N. S.) 1080; *Butts County* v. *Jackson Baking Co.,* 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567.

We conclude that the city can contract the debt for the purposes mentioned in the resolution and pledge for the repayment of the same the credit of the city and is-          3 sue negotiable bonds as evidence of such indebtedness. That is all that is attempted to be done in this case by the city.  The demurrer admits all of the allegations of the complaint, including the valuation of the taxable property in the year 1920, also the estimated revenue for the present year and the estimated expenses.  The demurrer will be sustained and the complaint dismissed, at cost of plaintiff.

CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.