SCOTT County Auditor, v. SALT LAKE COUNTY et al.

No. 3632.   Decided March 30, 1921.   (196 Pac. 1022.)

1. COUNTIES—WORD "TAXES" IN CONSTITUTIONAL DEBT LIMITATION PROVISION MEANS REVENUE.  In Const. art. 14, § 3, providing that, unless authorized by a vote of the electors, no debt in excess of the "taxes" for the current year shall be created by any county, the word "taxes" means all revenue, including that which is uncollected.[1]

2. COUNTIES—DEBTS OF ONE YEAR MAY BE PAID OUT OF NEXT YEAR'S TAXES.  Const. art. 14, § 3, limiting current indebtedness of counties, goes only to the question of the amount, and not of the time of payment, and, if the amount of indebtedness is limited to the revenue of the current year, the Constitution does not prohibit the payment of a debt incurred in one year out of the next year's taxes.[2]

3. COUNTIES—ACT EMPOWERING COUNTY COMMISSIONERS TO BORROW MONEY FOR CURRENT EXPENSES HELD CONSTITUTIONAL.  Comp. Laws 1917, § 1364, as amended in 1921, empowering commissioners, for the purpose of meeting current county expenses and the expenses incurred in the building and maintaining in the county of state roads, to borrow money and issue therefor negotiable notes or bonds, does not violate Const. art. 14, § 3.

4. CONSTITUTIONAL LAW—CONSTITUTION SOLE RESTRICTION ON LEGISLATURE.  What the Constitution does not prohibit the Legislature may do.

5. CONSTITUTIONAL LAW—UNCONSTITUTIONALITY OF STATUTE MUST BE CLEAR.  Before an act of the Legislature can be held unconstitutional, its invalidity must be clear and free from doubt.

Application by M. L. Scott, Auditor of Salt Lake County, for writ of prohibition against Salt Lake County and others.

PERMANENT WRIT OF PROHIBITION DENIED.

[1] *Muir* v. *Murray City*, 55 Utah 368, 186 Pac. 433; *Dickinson* v. *Salt Lake City*, 57 Utah 530, 195 Pac. 1110.

[2] *Muir* v. *Murray City*, 55 Utah 368, 186 Pac. 433.

*Morgan & Huffaker,* of Salt Lake City, for plaintiff.

*A. E. Moreton,* Co. Atty., and *Geo. G. Armstrong,* Asst. Co. Atty., both of Salt Lake City, for defendants.

WEBER, J.

M. L. Scott, county auditor of Salt Lake county, brings this proceeding to permanently prohibit Salt Lake county and its board of county commissioners from making, issuing, and delivering its promissory notes in the sum of $345,000 in renewal of notes given by Salt Lake county during the year 1920 to the Continental National Bank of Salt Lake City for money borrowed during 1920 by the county to pay lawful debts. It is also sought to prohibit the county commissioners from levying a tax for the purpose of paying the promissory notes when due.

Plaintiff has furnished a financial statement of the county for 1920 which shows that the expenses for that year exceeded the revenue, and that the county exceeded its constitutional debt limit during 1920. In their answer defendants allege that after the said financial statement was issued by the county auditor a further and more complete examination was made of the records and books of the county, and, instead of exceeding the revenue for 1920, there was an unexpended revenue at the end of that year of $51,917.53. Defendants furnish a verified statement that comprises the entire revenue for Salt Lake county for 1920, including an item of $65,951.82 still uncollected. To this answer the plaintiff has interposed a general demurrer.

Plaintiff contends that, as shown by the answer: (1) The county has exceeded its debt limit for 1920; (2) that the debts incurred by the county must be paid by the revenues for the year during which the debts were incurred or contracted; (3) that an act of the Legislature of 1921 hereinafter set out is unconstitutional.

Section 3 of article 14 of the state Constitution reads as follows:

"No debt in excess of the taxes for the current year shall be

created by any county or subdivision thereof, or by any school
district therein, or by any city, town or village, or any subdivision
thereof in this state; unless the proposition to create such debt,
shall have been submitted to a vote of such qualified electors as
shall have paid a property tax therein, in the year preceding such
election, and a majority of those voting thereon shall have voted
in favor of oncurring such debt."

That the word "taxes" in the above-quoted provision of
the Constitution means all revenue, including that
which is uncollected, is no longer a debatable question        1
in this state.  In *Muir* v. *Murray City*, 55 Utah, 368,
186 Pac. 433, it is said:

"Notwithstanding the section of the Constitution above quoted
uses the word 'taxes' instead of the word 'revenue,' we are inclined
to the view that the word 'revenue' conveys the meaning intended.
It is hardly possible to conceive that the members of the con-
stitutional convention intended anything other than that the city,
in creating an indebtedness without submitting it to the electorate,
should keep within the revenue of the current year.  Many reasons
exist in favor of such an interpretation, and, so far as we can see,
there are none against it."

In *Dickinson* v. *Salt Lake City*, 57 Utah, 530, 195 Pac.
1110, it is said:

"Taxes levied and collected in any fiscal year should be (and
usually are all) used in paying the running expenses of such fiscal
year.  As no taxes are due until the third Monday in September,
there must, of necessity, be a period of some 8½ months of the
fiscal year when none of the general taxes of that year are avail-
able for use in paying the running expenses of the municipality.
Either, therefore, the city officers must see to it that sufficient
funds are carried over from the preceding year to pay the run-
ning expenses of the city for the first 8½ months or the city
must borrow the necessary money to pay such expenses or at-
tempt to run the city without funds.  In other words, debts in
some form must be incurred on the anticipated revenues to be
later collected.  In our judgment, the opinion of this court in the
recent case of *Muir* v. *Murray City* (Utah), 55 Utah 368, 186 Pac.
433, is decisive of the question presented.  True, in that case it
does not appear from the opinion that the indetbedness was in-
but it does appear from the record on appeal that the indebtedness
was incurred in the month of March.  The city was held liable,
as it did not appear that the debt was in excess of the revenues
of that year.  Bearing on that particular question, this court said:
"The contention of the city that it had no power to create the

debt in question on the ground that it exceeded the limit fixed by the constitutional provision quoted should not prevail in the absence of proof that the debt was in excess of the potential revenues of the current year from whatever source the revenue was legitimately obtainable. Having failed to make such proof, its contention in this regard is without merit.' The statute seems to give the commissioners power to issue evidence of such indebtedness by the issuance of bonds or such other evidence as may best meet the needs of the city. So long as the proposed indebtedness is within the potential revenues of the city for the current year, we are unable to see any reason or lack of authority on the part of the city commissioners to create such indebtedness."

The undisputed facts being that Salt Lake County's debts and expenditures for 1920 did not exceed the potential or possible revenue, which includes all uncollected taxes for that year, plaintiff's first reason in support of its demurrer must fail.

That no debt in one year may be paid out of the next year's taxes has also been decided adversely to plaintiff's contention. Referring to section 3 of article 14 of the state Constitution, it is said in *Muir* v. *Murray City, supra:*

"But the inhibition only goes to the question of excess amount and not to the time of payment. If the amount of the indebtedness is limited to the revenue of the current year, we know of no constitutional objection to providing for payment after the year expires."

"Pay as you go" is a good business principle, but when taxes do not become due before the third Monday of September and are not delinquent till November 30th, with the fiscal year ending December 31st, it is obvious that plaintiff's claim that each year's debts should be paid out of that year's taxes during the year is an illusive dream. Thus a county's total levy of taxes and its other sources of revenue may amount to $2,000,000 for a particular year. During that year its expenditures and debts contracted may amount to the full $2,000,000 of potential, possible, or expectant revenue. If only $1,800,000 be collected, and there remains an indebtedness of $200,000, the indebtedness may be provided for in levying the next year's taxes.

The Legislature of 1921 amended Comp. Laws Utah 1917, § 1364, to read as follows:

Prohibition.   Writ Denied

"No county shall, in any manner, give or lend its credit to
or in aid of any person or corporation, or appropriate money in
aid of any enterprise.   No county shall. incur any indebtedness,
or liability, in any manner or for any purpose, exceeding in any
one year the taxes for the current year, without the consent of a
majority of such qualified electors thereof as shall have paid
a property tax therein in the year preceding such election, voting
at an election to be held for that purpose, nor unless, before or
at the time of incurring such indebtedness provision shall be made
for the collection of an annual tax sufficient to pay the interest
on such indebtedness as it falls due and also to constitute a sink-
ing fund for the payment of the principal thereof within twenty
years of the time of contracting the same.   For the purpose of
meeting the current expenses of the county and for the purpose
of meeting the expenses incurred in the building and maintaining
in said county of state roads built under and by authority of the
provisions of sections 2852, 2853, 2856 and 2857, the board of county
commissioners may borrow money, not in excess of ninety per
cent. of the taxes for the current year, issuing therefor negotiable
notes or bonds of the county bearing interest at the lowest rate
obtainable not exceeding eight per cent. per annum.   In the event
that such notes or bonds are issued prior to the annual tax levy
for the year in which said indebtedness is contracted, the amount
so issued for current expenses shall not exceed seventy-five per
cent. of the tax revenues of the preceding year, and the proceeds
shall be applied only in payment of current and necessary expenses
and there shall be included in said annual levy a tax sufficient
to pay the same at maturity.   In the event that the revenues in
any one year are insufficient through delinquency or uncollecta-
bility of taxes, or other cause, to pay when due all the law-
ful debts of the county which have been or may hereafter be con-
tracted, the board of county commissioners is authorized and
directed to levy and collect in the next succeeding year a sufficient
tax to pay all of said lawfully contracted indebtedness, and may
borrow as provided in this section in anticipation of such tax to
pay any such lawfully contracted indebtedness; provided, that no
such loan or loans shall be for a longer period than until the 31st
of December next following the date of said loan or loans; pro-
vided that no loan or loans made as herein provided on or after
the 1st day of January, 1923, shall bear interest at the rate in
excess of seven per cent. per annum, and provided, further, that
the promissory note or notes executed to raise funds for current
expenses shall be paid out of the taxes levied for such current
expenses and promissory notes executed for the purpose of raising
funds to pay for the building and maintenance of roads, as herein
provided, shall be paid only from the moneys derived for the pur-

poses of said road building whether said moneys be from state road fund for use in said county provided for by subsection A, section 6, chapter 81, Laws of Utah, 1915 (section 2856), from the special road tax, or from the appropriation by the county from the general county fund for state roads in the said county."

It is insisted by plaintiff that the above act is in violation of section 3, art. 14, of the Constitution. Certainly that section contains no words that expressly inhibit the legislative act above set out. Nor does it contain any language from which such prohibition must be necessarily im- **3, 4, 5** plied. We are unable to perceive anything in that or any other provision of the Constitution to which this act of the Legislature is repugnant. What the Constitution does not prohibit the Legislature may do. Before an act of the Legislature can be held unconstitutional it must be clear and free from doubt that it contravenes some provision of the Constitution. In our opinion section 1364, as amended by the Legislature this year, is in accord and harmony and not in conflict with or repugnant to the state Constitution.

Plaintiff's demurrer to the answer of the defendant is overruled. A permanent writ of prohibition is denied.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.