Carl R. Miller Tractor Co., Plaintiff, Maurice T. Laughlin, Receiver, Substituted Plaintiff, Appellee, v. Isabella Hope, Defendant; A. S. Romp et al., Interveners, Appellants.

No. 42564.

November 13, 1934.

F. A. Nichol, County Attorney, and Mabry & Mabry, for appellants.

D. M. Anderson, for appellee.

CLAUSSEN, J.—A contract was entered into between the Carl R. Miller Tractor Company and Monroe county by which the county agreed to buy certain road machinery. The machinery was delivered to the county and was used for several months. It was not paid for by the county. Subsequently the difficulties between the tractor company and the county were adjusted by an agreement by which the machinery was to be taken back by the company and a stipulated amount was to be paid by the county for the use of the machinery. Pursuant to such agreement the machinery was taken back by the company and the board of supervisors allowed a claim in favor of the tractor company for the amount agreed upon. The agreement last referred to was entered into in December of 1931. The defendant county auditor refused to issue a warrant for such amount. On January 3d, 1932, this action was brought to compel the auditor to issue and deliver such warrant to the tractor company.

The action is in mandamus. At the outset the defendant county auditor contends that mandamus will not lie to compel her to issue a warrant on the claim allowed by the board of supervisors. She contends that the tractor company has a remedy at law, in that if the warrant is not issued it may bring an action at law to enforce its rights against the county. Mandamus will lie to compel an officer to discharge a duty enjoined upon him by law. Code section 12440. By Code section 5141, it is made the duty of the county auditor to "sign all orders issued by the board for the payment of money." Under ordinary circumstances it is the duty of the county auditor to issue warrants upon claims allowed by the board of supervisors. The performance of this duty may be enforced by mandamus. Of what avail would it be to plaintiff to commence an action at law against the county for the establishment of its demand against the county, when the board of supervisors has already determined

that the demand is proper and allowed the claim? The effect of one proceeding is the same as the other. The demand is established as one entitled to payment. See Code section 11675. There is no reason to suppose that an officer will respect a determination of the merit of the claim by a court more highly than the determination of the question by the board of supervisors, for the validity of the determination in either instance rests on the same foundation— jurisdiction given by the law. When a claim has been established by either method, payment is in order, and in either event ministerial acts are necessary on the part of the auditor and treasurer before payment is actually made, for it is seldom that property of a county subject to execution exists. In either event the performance of the ministerial acts can be enforced by mandamus. What has been said is in relation to enforcing the issuance of warrants under ordinary circumstances. In this view our holding is consistent with the weight of authority (38 C. J. p. 767, sec. 406) and is in a measure sustained by our prior decisions. Bryan v. Cattell, 15 Iowa 538; Conrad v. Shearer, 197 Iowa 1078, 198 N. W. 633; Morris v. Hosmer, 182 Iowa 883, 166 N. W. 295; Ireland v. Hunnel, 90 Iowa 98, 57 N. W. 715; Prescott v. Gonser, 34 Iowa 175. It must also be borne in mind that the court has a large measure of discretion in the matter of issuing a writ of mandamus. Conrad v. Shearer, supra.

 But the auditor insists that there are unusual circumstances present in this case which make the issuance of the writ improper. She insists that under the provisions of Code section 5258, the contracts and agreement were invalid, in that sufficient funds were not available in the collectible revenue of the year to discharge the agreements. The record upon this matter is somewhat involved, but a very careful examination of the record leads inevitably to the conclusion that sufficient funds were available in collectible revenue, both at the time the first contract was made and at the time the compromise agreement was entered into, to pay the obligations created by such contract and such agreement.

 The position of the auditor can only be reached by assuming as she did, as a witness, that road maintenance costs and expenditures incurred after such agreement and contract had been entered into must first be subtracted from available funds in determining the validity of plaintiff's claim. It is of course obvious that under the statute the contract and agreement were invalid only in the event that when entered into the expenditure thereby created

would be in excess of collectible revenues of the year. It seems certain that if expenditures during any year were in excess of collectible revenues the county auditor could not go back in the year and select certain items for rejection and thus reach a position in which obligations subsequently incurred could validly be paid, and the prior items selected for rejection be invalidated under the statute. It seems certain that the limit of valid expenditure is reached when the total of collectible revenue is equaled, and that from then on all expenditures are within the ban of the statute.

Code section 5258, does not give the county auditor discretion in the matter of issuing warrants. The effect of the statute is to make the issue of warrants in excess of collectible revenues unlawful. Until the limit of collectible revenue is reached, the duty of the auditor to issue warrants on claims allowed by the board of supervisors is not affected by the section. Until such limit is reached the county auditor rests under the duty to issue warrants on claims allowed by the board.

The record indicates that the expenditures for the machinery purchased might be charged to either the "maintenance" fund or the "construction" fund and that the expenditure could perhaps be prorated between the funds. In this situation it is necessary to consider the condition of each of the funds, for if funds were available in the collectible revenues of either fund, the purchase would not fall within the prohibition of Code section 5258. If funds were, in truth, available in the collectible revenues for the payment of the machinery, then the fact that the board of supervisors allowed the claim for the purchase price out of one fund which thereby became overdrawn would not invalidate the purchase contract. We do not suggest that the auditor could be compelled to issue a warrant on the overdrawn fund. That question is not before us. This action is not brought to compel the issuance of such warrant.

In its general aspects the defendants' position rests largely upon the proposition that the effect of Code section 5258 was to invalidate the original agreement between the county and the tractor company. We have examined the record in relation to the financial condition of the county in the light of its crucial importance. We have announced the result of such study of the record. Neither the original contract nor the compromise agreement were invalidated by the provisions of Code section 5258.

Appellant insists that the contract and agreement were contrary to public policy. The contract and compromise agreement contain no terms or provisions inconsistent with public policy. The argument upon this proposition indicates that appellant's real contention is that the contract was obtained through fraud and collusion and the compromise agreement was induced by coercion. We have examined the record in the view suggested by the argument. Appellants' position is not sustained by the record.

It has been noted that this action was commenced early in January, 1932. The case seems to have had a stormy course in the settlement of its issues. It has frequently been before the trial court on motions of one kind or another. An examination of the contents of the pleadings indicates that the filing dates of some pleadings given in the abstract of record are incorrect. In any event, on a date not definitely revealed by the record, but in all likelihood subsequent to January 1, 1933, the board of supervisors passed a resolution directing the auditor not to pay the claim which had been allowed in December of 1931, the time of the compromise agreement. This was long after the present action had been begun. Appellant contends that with such action on the part of the board of supervisors the power to issue the warrant, which may have been hers prior to such action, has been destroyed and that the writ of mandamus cannot issue.

We are not confronted with the question whether the board of supervisors can under any circumstances effectively rescind the allowance of a claim. The problem before us is more fundamental and consequently more easy of solution. In December of the year 1931, the board of supervisors and the tractor company entered into a compromise agreement by which the difficulties growing out of the purchase of the machinery were compromised. We have held that the original purchase contract was valid for aught that appears in the record. With such holding goes every contention of appellant that the dispute between the county and the tractor company could not be the basis of a valid compromise agreement. Pursuant to the compromise agreement the tractor company took back the machinery, which had seen heavy use for five months, and the board of supervisors allowed a claim for the amount agreed upon as a settlement. We have held that there is nothing in the statutes or record which ipso facto invalidates the compromise agreement. The facts appearing in the record indicate that the amount agreed upon was

reasonable. Except for the ministerial acts of the auditor in drawing the warrant and the treasurer in paying the warrant, nothing remained to completely carry out the compromise agreement. In this situation we are agreed that, with no shadow of illegality hanging over the proceedings, the resolution now under consideration was futile. See 15 C. J. p. 661, section 372. This is in no wise inconsistent with our holding in the case of Harrison County v. Ogden, 165 Iowa 325, 145 N. W. 681, in which the board of supervisors rescinded their action in a transaction totally *ultra vires*.

The trial court reached the conclusion that the writ prayed for should be issued. We have reached the same conclusion.—Affirmed.

MITCHELL, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.