## STATE v. SPRING CITY et al.

No. 7942.   Decided Aug. 10, 1953.   (260 P. 2d 527.)

472

See 64 C.J.S. Municipal Corporations, sec. 1846. Obligations subject to municipal debt limit. 38 Am. Jur., Municipal Corporations, sec. 408 et seq.; 33 A.L.R. 1415.

*Clinton D. Vernon, Atty. Gen., Allen B. Sorenson, Asst. Atty. Gen.,* for appellant.

*Don V. Tibbs, Jr.,* Manti, *Dilworth Woolley,* Manti, *John S. McAllister,* Mt. Pleasant, for respondents.

McDONOUGH, Justice.

Plaintiff appeals from a decision of the trial court holding certain municipal bonds issued by defendant Spring City to be void and denying any recovery against Spring City or its city officials.

On January 15, 1948, defendant Spring City, a municipal corporation, through defendant city officials, issued a series of bonds with a total face value of $12,000. The State of Utah, plaintiff, through its Commission of Finance, purchased the entire issue for the sum of $13,498.67, representing principal, premium and accrued interest. The bonds were issued to raise funds "for the purpose of extending and improving the power and light plant to be owned and controlled by the city." Coupons were attached for interest payments, which were to be paid annually until maturity of the bonds. None of the bonds were to mature until the year 1961. Defendant Spring City paid all interest payments as they came due to and including January 15, 1950. On January 15, 1951, the state treasurer presented coupons for payment then payable for a total of $420. Payment was refused and no payments have since been made. Defendant Spring City maintains that the bonds and coupons are void.

Plaintiff brought this action against defendant Spring City and defendant city officials. The trial court held (1) That the bonds in question are void under Article XIV, Section 3 and Article XIV Section 4 of the Constitution of the State of Utah, (2) That plaintiff is not entitled to recover on the theory of money had and received and (3) That plaintiff is not entitled to recover from the issuing authorities for negligence in authorizing the bond issue. Plaintiff appeals, contending that the trial court erred on these points.

Article XIV Section 3 of the Constitution of the State of Utah reads as follows:

"No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district

therein, or by any city, town or village, or any subdivision thereof in this State; unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

No election was held authorizing the issue of the bonds in question. The trial court found that in 1948 the expenditures of Spring City exceeded its revenues by $2,067.90. The court concluded therefore that the municipality had created a debt in excess of its revenues which was unconstitutional and void.

The plaintiff argues that the validity of such a contracted indebtedness should be determined as of the time when it is incurred, rather than at the end of the year. Since the bonds in question were issued January 15, they did not exceed the prospective revenues for the year.[1] Plaintiff contends that they were therefore valid when they were issued and that their validity could not be impaired by subsequent expenditures by the city officials.

It is true that the validity of an indebtedness should be determined as of the time when it is incurred. *Scott* v. *Salt Lake County*, 58 Utah 25, 196 P. 1022; and see numerous cases collected at 159 A.L.R. 1263. Municipalities can and often do borrow or otherwise contract in anticipation of revenues to be received during the year. *Dickinson* v. *Salt Lake City*, 57 Utah 530, 195 P. 1110. It would be manifestly unfair to permit persons who entered into a valid contract with a municapility to be deprived of their rights by later acts of the officers of the

---

[1]The proposed 1948 budget of defendant Spring City lists expenditures anticipated at $16,091.08, in addition to $15,000 for "an electric plant pipeline." The revenues of the city in the year 1948 equalled $20,284.44. Thus, if current operating expenses and the anticipated cost of running the city are included, the issuance of the bonds exceeded the anticipated income at the time issued.

municipality. Obligations incurred after the debt limit is reached are void, and their payment should not be permitted to deprive legitimate claimants. If the debt is valid when incurred, there is no objection to payment from the income of a subsequent year. *Carl R. Miller Tractor Co.* v. *Hope,* 218 Iowa 1235, 257 N.W. 312; *Nelson County Fiscal Ct.* v. *McCrocklin,* 175 Ky. 199, 194 S.W. 323.

If, therefore, the bonds in question were valid when issued, they did not become invalid because of the fact that the defendant Spring City ended the year 1948 with a deficit. We are of the opinion, however, that the bonds were void when they were issued.

The provisions of Article XIV Section 3 were placed in the Constitution to protect the taxpayers against an abuse of their credit. The evident purpose is that municipalities be required to operate each year within their revenues for that year; they must "pay-as-they-go" unless the voters enlarge that limit. *Wadsworth* v. *Santaquin City,* 83 Utah 321, 28 P.2d 161; *Dickinson* v. *Salt Lake City,* supra; *Fritsch* v. *Board of Commissioners of Salt Lake City,* 15 Utah 83, 47 P. 1026. In this instance, the city officials of Spring City apparently decided that the city needed an electric plant pipeline which it could not well afford out of revenues for the current year. They nevertheless decided to purchase the facilities and to pay for them in future years. This was an attempt by the municipality to live beyond its income for the current year, which violates the purpose of Article XIV Section 3. The city did not "pay-as-it-went." Whether the revenues of Spring City for 1948 exceeded or were less than the amount of the bonds at the time they were issued should not determine the validity of the indebtedness. It would be unreasonable to suppose that bonds issued in 1948 with principal payable in 1961 were to be paid out of 1948 revenues merely because on January 15, when they were issued, prospective revenues for the year exceeded their amount. On the

contrary, the bonds were never intended to be paid out of revenues for 1948; they represent an indebtedness incurred in anticipation of the income of future years. Article XIV Section 3 requires that a city keep its expenses for a given year within the income and revenue provided for that year; it cannot incur debts to be met by revenues arising in years to come. *Fritsch* v. *Board of Commissioners of Salt Lake County*, supra; *Trump Mfg. Co.* v. *Buchanan*, 116 Mich. 113, 74 N.W. 466; *Trask* v. *Livingston County*, 210 Mo. 582, 109 S.W. 656, 37 L.R.A.N.S., 1045.

Plaintiff relies in his argument on *Muir* v. *Murray City*, 55 Utah 368, 186 P. 433. This was a suit to recover payment from Murray City of money borrowed to build a power line, payable in four annual installments. The court stated that Article XIV Section 3 was not a defense to the . action because no evidence showed that the debt was in excess of potential revenues for the current year. It is conceivable that the decision is not inconsistent with the views expressed above since there was no evidence to show that the moneys that could be reached to pay the indebtedness in question, were not from the revenues of the year in which the obligation was incurred. To the extent, however, that the Muir case can be viewed as holding that a municipality can incur indebtedness, absent an election authorizing it, in anticipation of the income of future years, it is overruled.

The trial court also held that the bonds are invalid under Article XIV Section 4 of the Constitution. In view of our holding as to the invalidity of the bonds under Section 3, discussion of this point is not necessary to disposition of the appeal. Nevertheless, since counsel have requested that we review the ruling, we elect to do so. Article XIV Section 4 provides that, when authorized to create indebtedness under Section 3, a city may incur an original aggregate indebtedness of four per cent of the value of taxable property within the corporate limits

of the municipality. An additional eight per cent is permitted "for supplying such city or town with water, artificial lights or sewers." Since Spring City supplied the city with artificial lights, it qualified to indebt the city to the extent of 12 per cent.

The value of the taxable property is "to be ascertained by the last assessment for State and County purposes, previous to the incurring of such indebtedness." The County Assessor's figure for the valuation of the taxable property in Spring City for 1947 was $179,407. If this figure is used to compute the debt limit, Article XIV Section 4 would limit the power to obligate the city to the sum of $21,528.84, including existing indebtedness. At the time plaintiff purchased the bonds in question, plaintiff already held unpaid bonds issued by defendant city in the sum of $14,500. Thus the issue of the additional bonds in the value of $12,000 would exceed a debt limit of $21,528.84. Plaintiff argues, however, that the limitation refers to the actual value of the property and not the assessor's figure. As an original proposition, the standard referred to in the Constitution appears to be the assessor's figure and some states with similar provisions so hold. *City of Chicago* v. *Fishburn*, 189 Ill. 367, 59 N.E. 791.

Prior to 1947, statutes of Utah provided for assessment of all taxable property at its full cash value. See Section 80-5-1, Utah Code Annotated 1943. Section 59-5-1, Utah Code Annotated 1953 as amended by Chapter 102, Laws of Utah, 1947, provides, however:

"All taxable propery must be assessed at forty percent of its reasonable fair cash value. * * *"

In the light of this statute, this court, in *Board of Education, Rich County School District* v. *Passey*, Utah, 246 P.2d 1078, held that the figure to be used in determining the debt limitation is the full value of the property computed from the assessor's forty per cent figure. (That

is, that figure, forty per cent of which equals the assessor's figure.) This view is in accord with decisions in Iowa, *N. W. Halsey & Co.* v. *City of Belle Plaine,* 128 Iowa 467, 104 N.W. 494, and Washington, *Hansen* v. *City of Hoquiam,* 95 Wash. 132, 163 P.391, where similar constitutional and statutory provisions prevail.

This court stated in the Passey case [246 P.2d 1079] :

"The language of Article XIV, Sec. 4 is clear and unambiguous. It establishes as a debt limitation 'four per centum of the value of the taxable property' in the district The word 'value' is not limited or qualified by any adjectives. It does not read 'assessed value' or specify any other particular kind of value. The word 'value' standing by itself can have only one meaning, viz. the full worth of actual value —not a fractional share thereof.

The assessment upon which depends the validity of the bonds in the present case was made prior to the enactment of the statute prescribing an evaluation by the assessor at forty per cent. It appears, however, that the 1947 statute was merely an enactment of what has always ∎ been the practice of assessors. This court may take judicial notice of such a pre-existing condition. 78-25-1 (3) Utah Code Annotated 1953; *State Board of Land Com'rs* v. *Ririe,* 56 Utah 213, 190 P. 59. The records of the Utah State Tax Commission show that there was no substantial increase in assessment for 1947 over previous years. It follows therefore that assessment of the taxable property in Spring City in the last assessment previous to the issue of the bonds equalled forty per cent of the full value of the property. The computation of the debt limitation in this case should come within the rule of *Board of Education, Rich County School District* v. *Passey,* supra. The full value of the taxable property in Spring City, $448,517.50, would permit a total indebtedness under Article XIV Section 4 of $53,822.10, which is $27,322.10 in excess of the then existing debt of the municipality. The trial court therefore erred in holding that this bond issue violated Article XIV Section 4 of the Constitution.

Even though the bonds are invalid under Article XIV Section 3 of the Constitution, plaintiff contends that plaintiff is entitled to recover upon the theory of money had and received. Plaintiff argues that the bonds were purchased under mutual mistake, that defendant ■ Spring City used the money for a legitimate purpose for its benefit and that plaintiff is therefore entitled to restitution apart from any express contract. Although it results in a hardship on the purchasers of such invalid bonds, neither reason nor authority support this position.

The constitutional provisions were enacted as a protection for the taxpayers against an abuse of their credit. The protection is absolute in nature. If recovery is allowed against the municipality on a theory of money had and received, the entire purpose for which the provision exists is contravened. Although the legal theory is changed, the practical result would be payment by the taxpayers of an obligation against which the Constitution specifically attempts to protect them.

This situation should be distinguished from cases where, although the city was authorized to incur the indebtedness, bonds issued by the municipality were found to be invalid because certain procedural requirements were not met or because the city was not authorized to issue bonds negotiable in form or payable in the manner adopted. In such situations, justice may well require restitution on a theory of money had and received. Where a constitutional prohibition against indebtedness is involved however, most courts will not permit any such recovery. *Litchfield* v. *Ballou*, 114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132; *Town of Belleair* v. *Olds*, 5 Cir., 127 F.2d 838; *Fairbanks-Morse Co.* v. *City of Geary*, 59 Okl. 22, 157 P. 720.

The plaintiff also contends that the trial court erred in denying recovery against the individual city authorities responsible for the invalid bond issue on a theory of negli-

gence. This claim is without substance. There is no evidence of negligence on the part of the officials ■ in the performance of their duties. The invalidity of these bonds results from the fact that they were issued in anticipation of the income of future years. Defendant city officials were entitled to rely on the advice of counsel and the opinion of the Attorney General, which opinion was issued prior to disposition of the bonds, as to the validity of such bonds. It would be unfair and unjust to require the city officials to guess at their peril what the opinion of this court as to the validity of the indebtedness would be.

Judgment affirmed.

WOLFE, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, J., does not participate.