ELLSWORTH DAGGETT, Respond't, *v.* STEPHEN H. LYNCH, Treasurer of Salt Lake County, Appellant.

*Authority of Counties to Incur Indebtedness.*

Counties have no authority to incur indebtedness bearing interest, or to issue interest bearing warrants, without express legislative authority.

*Effect of Legislative Acts of March 8, 1894 and March 25, 1896.*

The act of March 8, 1894, authorizing the issuance of interest bearing warrants to pay for labor on roads, such a warrant, void as being in excess of the debt limit of a county, was validated by the Act of March 25, 1896. But a warrant void, as being in excess of the debt limit, and containing a stipulation to pay interest, void because lacking express legislative authority for its insertion, was validated as to principal only.

*Power of Legislature to Validate County Warrants.*

A legislature, possessing the power to raise the debt limit of a county, when a warrant void by reason of being issued in excess of such limit, is issued, may afterwards validate such warrant.

(Decided October 13, 1898.)

Appeal from the district court of Salt Lake county, Hon. A. N. Cherry, Judge.

Action by plaintiff, to obtain a writ of mandate to compel the payment of certain county warrants. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Waldemar Van Cott, Esq., Graham F. Putnam, Esq.,* and *Ray Van Cott, Esq.,* for appellant.

The respondent is not entitled to any interest on the warrants in question, as they were never registered after

their validation. *P. V. Coal Co.* v. *County Commissioners,* 15 Utah 106-107; *Deny* v. *Ames,* 26 Cal. 372.

If the court    *   *   *    concludes that the warrants should bear interest, then such interest should only be allowed from June 5, 1896, the day the warrants were validated. *P. V. Coal Co.* v. *County Commissioners,* 15 Utah 106-7.

On the principle of *stare decicis,* this court should adhere to its former decision. The principle was applied in *Whitmore* v. *Cope,* 11 Utah 359-60.

If any interest at all is to be allowed on these warrants, then interest should only be at the rate of five per cent per annum.

The powers of public corporations are to be strictly construed, and they have only those powers that are expressly given to them or which are necessarily implied. *Hall* v. *Jackson County,* 95 Ill. 352.

*Messrs. Stephens & Smith* and *Messrs. Dey & Street,* for respondent.

In validating a void contract its obligations are not impaired, but legal impediments to its enforcement according to the intention of the parties are removed. Suth. on Stat. Const. p. 617; 1 Kent. Comm. 455; *Grenada County* v. *Beogden,* 112 U. S. 261, 271; *Anderson* v. *Santa Anna,* 116 U. S. 356, 364 and cases cited; *Read* v. *Plattsmouth,* 107 U. S. 568; *Baker* v. *Seattle,* 27 Pac. Rep. 462.

A statute directing "bonds shall be paid" is in (all) respects equivalent to original authority. *Beloit* v. *Morgan,* 7 Wall. U. S. 619.

It is the duty of the court to construe the act of 1896 as retroactive. *People ex rel Collings* v. *Spicer,* 99 N. Y. 225.

Since the curative act of 1896, the county cannot set up the plea of *ultra vires.* The warrants are a lawful contract. *Erskine* v. *Nelson Co.*, 27 L. R. A. 696 and notes; *Williams* v. *Shoudy Co.*, Treas. 41 Pac. 169; *West* v. *City of Ceehatis*, 41 Pac. 171.

That the warrants draw interest at the rate of eight per cent. *State* v. *Buttles*, 3 Ohio St. 309; *Bank* v. *Gelback*, 24 L. R. A. 359.

Where interest is reserved expressly by the contract or is implied by the nature or the promise, it becomes part of the debt, and is recoverable as a matter of right. *Redfield* v. *Iron Co.*, 110 U. S. 174, 176; *Richmond & C. Co.* v. *Richmond, etc., Co.*, 34 L. R. A. 625, 630.

ZANE, C. J.

This is an appeal by the defendant, from a judgment of the district court, requiring him to pay to the plaintiff, two warrants issued to his assignor by the county clerk of Salt Lake county, one Dated December 10, 1894, for $8.00, incurred for the benefit of paupers and insane persons, and the other dated December 17, 1894, for $26.00, for labor upon the public roads. It appears that both were issued for indebtedness incurred in excess of the debt limit of the county, as provided by law, and were void, for that reason. It further appears that the legislature of the State, by an act approved March 25, 1896, validated such warrants, so far as they were invalid in consequence of having been issued in excess of the debt limit. Sec. 1, of the act legalizing them, provides:

" * * * nothing in this act contained shall be construed to prohibit or prevent any of the said counties, or any taxpayer thereof, from contesting or defending against any such warrant, claim or indebtedness, upon any ground other than that the same was issued or contracted or attempted to be contracted in excess of such debt limit, or

to give validity to any warrant, claim or indebtedness which shall be determined by any court of competent jurisdiction to be void upon any other such ground." Laws of Utah, 1896, 179.

This act validated such warrants only so far as they were void in consequence of having been contracted in excess of the debt limit. The proviso is that the county or any taxpayer is not prohibited from defending against any such warrant upon any other ground than that the debt was contracted, or that the warrant was issued in excess of the debt limit.

The warrant bearing date December 17, 1894, was issued to pay for labor upon roads, in pursuance of an act of the legislature, approved March 8, 1894, providing such warrants should be redeemed within two years, and providing for the levy and collection of a tax to redeem the warrants so issued. This law authorized the issuance of warrants, bearing interest at eight per cent. per annum, to pay for labor on the roads, redeemable within two years, but it provided a fund by taxation for their payment. Such territorial law authorized warrants payable at a future day, only for the purpose named, drawing interest at eight per cent. per annum. So much of the warrant as provided for the payment of interest was not void, because there was no law authorizing such a provision.

The promise to pay interest was void for the same reason that the promise to pay the principal debt was,—solely because the warrant had been issued in excess of the debt limit, and so far as the warrant was void, for that reason the act of March 25, Id., validated it.

The legislature possessed the power when the warrant was issued, to raise the debt limit, and the war-

rant having been issued in excess of that limit, the legislature might validate it.

An act of a county void for want of authority, may be validated by the legislature if it had the power before the void act was done, to authorize it.

But a different question is raised upon the other warrant, bearing date December 10, 1894, so far as it provides for the payment of interest. This warrant was issued upon indebtedness incurred for the care and support of paupers and insane persons, and there was no statute of the territory authorizing the county to pay interest on such indebtedness, or to issue warrants therefor, drawing interest.

If the warrant was void because it was issued in excess of the debt limit, and so much of it as provided for the payment of interest was also void because there was no law in force when it was issued authorizing a contract to pay interest, the act of March 25, 1896, validated it, so far as it was void because it exceeded the debt limit, but not so far as it was void because it provided for the payment of interest without authority of law. In that case it was validated as to the principal, but not as to the interest. This brings us to the question, was the county authorized to pay interest on such indebtedness as this without a statute authorizing it, or to issue warrants upon such indebtedness drawing interest.

Public corporations, like private ones, can only exercise such powers as are expressly conferred, and such as are necessary to their exercise, and, therefore, incident to them.

There was no territorial law prior to statehood expressly authorizing the county court to pay interest on county indebtedness of the class for which the warrant of December

10th was issued, or to issue warrants therefor drawing interest.

The territorial legislature, by an act of March 8, 1894, *Id.*, authorized counties to issue warrants bearing interest, to a specified limit, for labor upon the public roads; but refused to authorize the issue of warrants bearing interest for any other purpose. And such legislature had, prior to that time, authorized counties to issue bonds to a limited amount, bearing interest, not exceeding six per cent per annum. Sess. Laws, Utah, 1892, p. 31.

The territorial legislature expressly authorized counties to incur indebtedness bearing interest, so far as deemed necessary, and beyond that it withheld such authority. If the law-making power understood that counties already possessed the power to issue warrants bearing interest for current expenses, why did it expressly authorize them to issue warrants bearing interest for labor on the roads, and with that authority so carefully restricted and guarded?

Experience and observation in the past discloses the evils and dangers of intrusting county boards with the general power to issue interest-bearing warrants. Some of the counties and cities of the late territory, as well as similar municipalities in the various states, have been greatly embarrassed and injured by the exercise of such power. Such discretion holds out the temptation to create needless debts and make extravagant expenditures, and affords opportunities and facilities for fraud. In view of such considerations, we are disposed to assume that the territorial legislature intentionally refused to confer such power on the counties. For such reasons, we hold that the county court of Salt Lake county was not authorized to issue warrants bearing interest without express legislative power to do so.

While this question has not been before this court or the

supreme court of the late territory, it has been decided by the highest courts of other states, and we must admit there is an irreconcilable conflict in those decisions; but in the light of experience and observation, and in view of the welfare of the people of the various counties, and of the reasons stated, we are disposed to follow those authorities which hold that counties have no authority to incur indebtedness bearing interest, or to issue interest-bearing warrants, without express legislative authority. *Hall* v. *Jackson County,* 95 Ill. 352; *County of Hardin* v. *Mc-Farlan,* 82 Ill. 138.

It appears that the warrant dated December 10, 1894, was, by its owner, presented to the county treasurer for payment, on December 21, 1894, and that he refused to pay it, for want of funds, and that it was then registered; that on September 20, 1897, he again presented it for payment, and the treasurer offered to pay the principal, with five per cent interest, but the plaintiff refused to accept it, and demanded the principal and eight per cent per annum interest thereon, from the time it was registered. This presents the question, was the treasurer required to pay more than five per cent, and if so, to what time?

Section 59, laws 1896, p. 540, provides that, where a warrant is presented to the treasurer for payment, and the same is not paid, for want of funds, the treasurer must endorse thereon 'not paid, for want of funds,' annexing the date of presentation, and signing his name thereto, and from that time until funds are on hand to pay the same, the warrant shall bear five per cent interest per annum."

The law validating this warrant, as to the principal, took effect on June 5, 1896, and from that date interest should be paid on the principal sum named in the warrant, at the rate of five per cent per annum.

We are of the opinion that the court below erred in holding the defendant, the county treasurer, was required to pay interest on the principal sum named in the warrant first described in plaintiff's complaint, and bearing date December 10, 1894, from the date of its registration, at the rate of eight per cent per annum.

The judgment appealed from is reversed and remanded with directions to the court below to enter a judgment requiring defendant to pay the warrant set out in plaintiff's complaint, bearing date December 17, 1894, with interest thereon at the rate of eight per cent per annum from December 21, 1894, to the entry of judgment, and also requiring him to pay the principal of the warrant, described in the complaint, bearing date December 10, 1894, with interest thereon at the rate of five per cent per annum, from June 5, 1896, until September 10, 1897, and in case such payment is not made upon demand, to issue a peremptory writ of *mandamus* compelling him to do so.

Judgment reversed, with costs to appellant.

BARTCH, J., concurs.