## MOE v. MILLARD COUNTY SCHOOL DIST.

### No. 3215.   Decided March 24, 1919.   (179 Pac. 980.)

1. FIXTURES—BETWEEN BUYER AND SELLER OF CHATTELS—REMOVAL. Although under Const. art. 14, section 3, and Comp. Laws 1907, section 1875, a contract for the installation of fixtures in a schoolhouse entered into with a school district which has exceeded its constitutional debt limit is void, the seller is entitled to rescind and remove such fixtures as can be removed without materially injuring the building; the ordinary rule as to fixtures not applying.   (Page 147.)

2. SCHOOLS AND SCHOOL DISTRICTS—UNAUTHORIZED CONTRACT—RECOVERY OF GOODS BY SELLER—REFUNDING OF MONEY PAID. One who has furnished fixtures to a school district, which has exceeded its constitutional debt limit, in rescinding the contract, will not in equity be required to refund any money which was paid, where there are many articles some of which can be removed from the schoolhouse, without material injury to the building, and others not.   (Page 151.)

3. SCHOOLS AND SCHOOL DISTRICTS—UNAUTHORIZED CONTRACTS—REMEDIES OF SELLER—REMOVAL OF FIXTURES. A seller of schoolhouse fixtures to a school district which has exceeded its constitutional debt limit will, under direction of a court of equity, be permitted to remove such of the fixtures as can be removed materially without injuring the building, to an amount necessary to compensate him for the unpaid purchase price with interest.   (Page 151.)

Appeal from the District Court of Millard County, Fifth District; *Hon. D. H. Morris*, Judge.

Suit by E. O. Moe, as assignee of the H. G. Blumenthal Company and of the Provo Foundry & Machine Company, against Millard County School District, as successor of Central School District No. 5 of Millard County.

Judgment for defendant.   Plaintiff appeals.

REVERSED and REMANDED, with directions.

*Walton & Walton* of Salt Lake City, and *Coleman & Tucker* for appellant.

*J. A. Melville* of Salt Lake City, for respondent.

BROWN, District Judge.

The plaintiff brought this suit as assignee of H. G. Blumenthal Company, a corporation, and of Provo Foundry & Machine Company, a corporation, against the defendant, as successor to Central school district No. 5 of Millard county by legislative enactment consolidating into one body corporate all of the school districts of said county. The amended complaint, in separate causes of action, alleges that during the year 1914 two contracts were entered into by said Blumenthal Company, and one by said Provo Foundry & Machine Company with said Central school district No. 5 for the installation of certain heating, plumbing, and ventilating fixtures in the A. C. Nelson school building then in the course of construction by said district. By the terms of the first contract with Blumenthal Company the district was to pay $5,600 upon the installation of certain plumbing, heating, and ventilating fixtures, with interest at 8 per cent. per annum, payable quarterly; by the terms of the second contract with said Blumenthal Company the district was to pay the sum of $730.57 upon the installation of certain additional plumbing, heating, and ventilating fixtures; and by the contract with Provo Foundry & Machine Company the district was to pay $225 for certain dampers installed in said system.

The amended complaint further alleges full performance in good faith of the terms of said contracts by the assignors or the plaintiff, and the acceptance of the installed property by said district before May 17, 1914, since which time the said district and its successors have had possession and the use of said property; that certain payments were made in the first contract with the Blumenthal Company, leaving a balance due on said contract of $2,378.75, and that no further payments have ever been made on any of said contracts nor for said property; that said Central school district No. 5 and the defendant held out to the assignors of the plaintiff that the said property would be paid for until March 6, 1917, when

the defendant refused to make payment and denied liability, asserting that all of said contracts were null and void because said Central school district No. 5 was beyond its constitutional debt limit at the time they were made; that plaintiff has no speedy or adequate remedy at law; that the property was removable without damage to the building, and could be replaced by other property; and that demand had been made for the right to remove the same, which had been refused.

The complaint prayed as follows:

"Wherefore this plaintiff asks that the defendant Millard county school district pay to this plaintiff the sum of $3,394.66, with interest thereon at 8 per cent. per annum, payable quarterly from the date of the beginning of this action until paid, or that said defendant, Millard county school district, be declared to hold the property installed by said H. G. Blumenthal Company and by Provo Foundry & Machine Company as above set out as a constructive trustee, as having obtained said property through mistake of fact and constructive fraud, and that said defendant and said plaintiff be placed in the positions which they, or their predecessors in interest, occupied before said mistake or said fraud occurred; that upon the payment to said defendant by this plaintiff of a sum equal to all amounts paid to this plaintiff or his predecessors in interest by this defendant or its predecessors in interest, with legal interest thereon, said defendant shall turn over to this plaintiff all of said property which can be removed from said school building without unreasonably damaging or unreasonably injuring said building, other than by the damage or injury caused through the loss of said property, together with a reasonable rental for the use of said property by said school district from the time of installation of said property until the delivery of same; and this plaintiff asks such further and additional relief as the court deems just, proper, and equitable."

By its answer the defendant admits the installation of said property under the said purported contracts; the payments as alleged by the plaintiff; that demand had been made upon it for payment, and also for removal of said property and its refusal to comply with either of said demands; that said Central school district No. 5 was beyond its debt limit at the time of making the contracts; and that the contracts were null and void.

The answer further alleges that at the time of the installa-

tion the property was permanently affixed to said building
and constituted an essential part of the same, without which
it would be imperfect, incomplete, etc., that by becoming so
attached it lost its status as personal property and became
real estate, that the property was not removable without ma-
terial injury to the building, nor without destroying its use-
fulness as a school building, that, if removed, the school would
have to close, that it had never received from said Central
school district No. 5, nor did it have, any assets or funds that
it could lawfully apply in the payment of said claims, and
that by installing the same in such way as was done, with
full knowledge and without fraud, the plaintiff was estopped
from claiming or removing the same, and prayed dismissal of
the suit.

Upon a finding that the property sought to be removed was
permanently affixed to, and in, the said A. C. Nelson school
building as a part and parcel of the same, and that it was
an essential and necessary part of the building, and that it
was so attached to the building as to form a part and parcel
of the real estate, and that it could not be detached or re-
moved from the said building without permanently and mate-
rially injuring the building and destroying its usefulness as a
school building, the court entered its judgment dismissing
plaintiff's complaint; hence this appeal.

Section 3 of article 14 of the Constitution of this state
reads as follows:

"No debt in excess of the taxes for the current year shall be
created by any county or subdivision thereof, or by any school
district therein, or by any city, town or village, or any subdivision
thereof in this state; unless the proposition to create such debt,
shall have been submitted to a vote of such qualified electors as
shall have paid a property tax therein, in the year preceding such
election, and a majority of those voting thereon shall have voted
in favor of incurring such debt."

It is conceded that under the provisions of our Constitu-
tion the plaintiff cannot recover upon the express con-
tracts entered into for the installation of the property       1
involved in this case, nor upon quantum meruit, for
the reason that both express and implied contracts in viola-

tion of said provision are null and void.    Respondent contends that this provision and Comp. Laws Utah 1907, section 1875 (substantially a re-enactment of the constitutional provision), prohibit the recovery of the property for the reason that, if such recovery were allowed, persons selling property to a school district in violation of said provisions could indirectly compel the school district to pay for the same, and thus accomplish indirectly the very thing which both the Constitution and the statute prohibit.    Appellant contends, on the other hand, that to deny such recovery would be most inequitable, and would permit a very salutary provision of law to be used by the school district as a means to acquire something for nothing.

Appellant cites the case of *Superior Mfg. Co.* v. *School District No. 63,* 28 Okl. 293, 114 Pac. 328, 37 L. R. A. (N. S.) 1054, as stating the rule applicable to this class of cases.    That was an action by a vendor to recover the purchase price of school supplies and furniture which were furnished when the district was beyond the debt limit, and in its decision the court said:

"While, under the circumstances arising in this class of cases, all the authorities deny the right of recovery either on the contract or quantum meruit, still all agree that the municipality cannot keep the property, and that plaintiff is entitled to retake it.    This seems to be the only remedy available."

Respondent concedes the principle announced in that case, and admits that, "if the property which plaintiff seeks to recover has not been installed in the building, and permanently affixed to the same, then a seller may rescind the contract and recover back the goods."    Respondent therefore plants its case squarely upon the doctrine of fixtures, and appellant denies the application of the rules governing fixtures to the facts of this case.

It might be conceded that most, if not all, of the property sought to be removed by this action would be classed as fixtures in a contest between parties where the application of the rules of law governing fixtures was admitted, such as between landlord and tenant, mortgagor and mortgagee, etc.    A case of that kind is the case of *Filley* v. *Christopher,* 39 Wash.

22, 80 Pac. 834, 109 Am. St. Rep. 853, cited by respondent. But we cannot see how the doctrine of fixtures becomes applicable to this case so as to prevent a recovery of the property here sought. Why should not a school district be required to return real estate as readily as personal property which it had acquired under circumstances such as are shown by the facts in this case? If the contract were void because against public policy, such as a gambling contract, or was part of a fraudulent conspiracy between the parties to defraud others, the courts might refuse to aid either party, either by way of compelling performance, or the return of benefits; but even then we can see no difference as between personal property and real estate. Neither can we see that it makes any difference in this case whether the property has retained its character as personal property, or has, by being affixed to the freehold, become real estate. If it had become so affixed to the building, as it is admitted that some portions of it are, that its removal would cause material injury to the structure of the building itself, then it would seem to us that a recovery could not be had, not for the reason that the property had become a "fixture" in the ordinary meaning of that term, but for the reason that to permit its removal would work injustice upon the owner of the property to which it had been so affixed.

This controversy is between the parties to the transactions (or their successors in interest) by which the property claimed by the plaintiff was affixed to that of the defendant, and no third party's claims or rights have intervened so as to involve a question of fixtures as understood in the law. See 19 Cyc. 1048; also *Snouffer & Ford* v. *City of Tipton*, 161 Iowa, 223, 142 N. W. 97, L. R. A. 1915B, 173, wherein this language is found:

"Some confusion has arisen over the meaning of this term 'fixture.' As a rule, the question only arises where the party making the annexation is claiming the right to remove property which he had annexed to a freehold against a stranger to the original contract. In other words, the doctrine of fixtures applies, as a rule, to chattels annexed to a freehold in actions between vendor and vendee of the real estate, landlord and tenant, mortgagor and mort-

gagee, the seller of the fixture and a purchaser, mortgagee or creditor of the freehold. As a rule the owner of land and the seller of personal property make any agreement they choose regarding personal property to be annexed or attached to the land. [Citing cases.] A different question arises when rights of third parties intervene, and the subject of fixtures then becomes of great importance."

There are a number of cases where bridges have been constructed on public highways under contracts with public officials which were ultra vires, and therefore void, and in that class of cases the courts have permitted the removal of the material used in their construction as the only remedy available to the party furnishing the same. Clearly in such cases the material would be as firmly attached to the freehold, and the inconvenience to the public as great as in the case at bar; the latter being also urged by the respondent as a reason why the removal of the property should not be permitted in this case. See *Floyd County* v. *Owego Bridge Co.*, 143 Ky. 693, 137 S. W. 237; *Salt Creek Tp.* v. *King Iron Bridge & Mfg. Co.*, 51 Kan. 520, 33 Pac. 303.

In the case at bar, the evidence shows that the greater part of the property sought to be recovered may be removed by merely taking out screws by which it is fastened to the building and uncoupling joints by which it is attached together, and, as to the sectional boiler, by dividing it into sections so as to permit of its being removed through the doors the same as it was brought in, and without any permanent injury to the structure of the building itself. The effect of such removal would be merely to leave the building incomplete the same as it would have been without the installation of the materials under the void contracts, and there is nothing to prevent the defendant school district from now taking such steps as are necessary to replace the same with similar materials and appliances obtained elsewhere, nor, indeed, from entering into a valid contract with the plaintiff for the purchase of the material as presently installed. It might require a vote of the taxpayers to authorize such purchase if the school district is without sufficient current funds, but it is scarcely conceivable that the taxpayers would not prefer to

do that rather than either to have an incomplete and unsuitable school building or to retain the benefit of property to which they have no equitable or just right.

We do not wish to be understood as holding that under any circumstances should the defendant be compelled to pay under the terms of the void contracts, nor the plaintiff permitted to profit thereby.

However, to deny removal of this property, which is clearly subject to identification, easily removable without material injury to the structure of the building, not subject to any liens, when it is conceded that the plaintiff has no other remedy, would clearly be a subversion of the purpose for which the constitutional and statutory provisions in question were framed and would permit the taxpayers of the defendant school district improperly, because unnecessarily, to shift the burden of the education of the children of the district to the shoulders of those who in good faith have furnished the material for the completion of the school building, to the extent of the value of this property, which we think they would not desire, nor should they be permitted to do. ·See *Bardwell* v. *Southern Engine & Boiler Works,* 130 Ky. 222, 113 S. W. 97, and annotation to same in 20 L. R. A. (N. S.) 110.

If the material furnished had been supplies which had been used or had been property which had become mingled with other property as to be not subject to identification, or have been so affixed as to be irremovable, that result might necessarily follow, because the plaintiff would be without remedy.

The chief difficulty with this case is to determine just what the judgment should be in view of the fact that a part of the purchase price has been paid and in view that **2, 3** some of the property which remains unpaid is not removable without injuring the building within the rule herein laid down. True, plaintiff has offered to repay that portion of the purchase price which was paid, but in doing that he demands that he be allowed or paid a reasonable amount for use of the property which has been used in the school building. We cannot perceive the necessity of refunding the money that was paid as aforesaid. To that extent the contract has

been executed, and there certainly is no good reason why in equity that matter should be reopened. Nor is it necessary to do that in order to reflect justice between the parties. If there were but one article that had been sold, or the articles were so united that they would have to be treated as an entirety, then, in order to reflect full justice, if plaintiff were given the right to remove and to repossess himself of all he had sold, he should also be required to refund what he had received. In this case, however, there are many articles, some of which can be removed while others cannot. Again, as already stated, a part of the purchase price has been paid and received, and to that extent the matter, in equity at least, should be treated as closed. The only question therefore is: To what extent shall plaintiff be permitted to remove his property? In our judgment he should only be permitted to remove so much thereof in value as has not been paid for and no more. Under the evidence as it now stands, however, we cannot say just what part of the property can be removed and what part cannot. Nor can we say what part of the property the plaintiff should be permitted to remove in order to prevent injustice. Nor can we say what, if any, sum plaintiff should receive as compensation for the use of his property, if, indeed, he is entitled to receive anything—a matter we cannot and do not consider at this time in view that the case was not tried on that theory and no opportunity has been afforded either to the court or to the parties to consider it. It may well be, however, that, as hereinbefore suggested, the parties may now adjust that matter amicably, and may agree either on what property shall be removed or what the defendant will purchase and pay a reasonable value therefor, the value to be fixed as of the date when it was purchased. As a matter of course, if the parties agree and fix the value as of the date suggested, or if the court fixes the value as of that date, the question respecting compensation for the use of the property is entirely eliminated from the case, since the plaintiff will then be paid in full for the reasonable value of the property with legal interest.

The judgment is therefore reversed, and the cause is re-

manded to the district court of Millard county, with directions to take further testimony, if necessary, upon the questions herein suggested, and to make findings of fact, conclusions of law, and enter its judgment in accordance with the views herein expressed; in case, however, the parties cannot agree, as herein suggested, then to enter judgment permitting the plaintiff to remove so much of the property which can be removed without substantial injury to the building as may be necessary to compensate him for the unpaid purchase price with legal interest, specifying the particular articles that may be so removed and fixing their value as hereinbefore suggested; appellant to recover costs on this appeal.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.