(No. 45938.—

THE CHICAGO PATROLMEN'S ASSOCIATION *et al.*, Appellees, v. THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed March 20, 1974.*

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Ann Acker, Assistant Corporation Counsel, of counsel), for appellants.

Williams and Leonard, Ltd., of Chicago (Robert F. Sharp and Leonard D. Rutstein, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This is a class action by certain individual members of the City of Chicago Police Department and by the Chicago Patrolmen's Association against the City of Chicago. The purpose of the action is to compel the City to pay to the police officers certain "step" and "longevity" salary increases for the year 1972. Both parties moved for summary judgment, and the trial court entered a decree ordering that the City forthwith pay to each member of the police force who would have been entitled to step or longevity increases during 1972 the sum of money to which he would have been entitled. The decree also ordered that the entire period of time from August 14, 1971, to and including December 31, 1972, was to be counted by the defendant City in determining the step and longevity position of each member of the Chicago Police Department who was employed during all or any portion of that period. The court retained jurisdiction for the purpose of setting attorney's fees. The City appealed, and under Rule 302(b) it was ordered that the appeal be transferred to this court.

The question in the case is whether as a matter of law the plaintiffs were entitled to step or longevity increases during the year 1972.

For a number of years prior to 1972, the annual appropriation ordinances of the City had provided for specific starting wages for the various job classifications within the civil service system, for "step" increases within each job classification based upon months of service in that classification, and for additional "longevity" increases as individual employees reach the maximum pay range within their classification. The appropriation ordinance for the year 1971 provided for such increases, and they were paid to those City employees who qualified for them until August 15, 1971. On that date, the President of the United States, pursuant to the Economic Stabilization Act of

1970 (Pub. L. No. 91—379, 84 Stat. 799), issued Executive Order No. 11615, which froze all prices, rents, wages and salaries for a period of 90 days, and thereby prevented the payment of step and longevity increases to those who qualified for them on and after August 15, 1971.

Thereafter, on October 15, 1971, the President issued an Executive Order which established Phase II of the Wage and Price Freeze and also established the Cost of Living Council. That Council established guidelines which limited salary increases to 5.5%. The appropriation ordinance of the City for the year 1972 was passed on December 10, 1971, and it increased the salaries of civil service employees by 5 to 5.5% based upon the salaries they actually received in 1971. It did not contain appropriations for step or longevity increases for any City employees.

On January 14, 1972, the President issued an Executive Order which permitted a retroactive payment of increases which were scheduled to be paid during Phase I in accordance with a pay practice which had been established prior to August 15, 1971, when Phase I had gone into effect. On February 2, 1972, after receiving an official ruling under the President's Executive Order, the City paid all step and longevity increases that had been scheduled and appropriated for under the 1971 appropriation ordinance.

The critical fact in this case is that the 1972 appropriation ordinance of the City made no provision for the step and longevity increases which the plaintiffs seek to recover. The critical legal consideration is found in section 8—1—7 of the Illinois Municipal Code, which provides:

> "No contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense.

Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof." Ill. Rev. Stat. 1971, ch. 24, par. 8—1—7.

The plaintiffs nevertheless base their right to recover upon an alleged contractual obligation and upon the doctrine of equitable estoppel. As a predicate for these contentions they seek first to establish that the relationship of a police officer to the City differs from that of its other employees. Indeed, the relationship of police officers is characterized by the plaintiffs as "a very special one, a kind of super contract," and it is pointed out that the appropriation for the police department is customarily set out in the appropriation ordinance in a schedule separate from those of other City departments. We do not see, however, that any particular rights on the part of police officers attach by reason of this circumstance, any more than special rights of employees of other departments of the City government accrue by reason of the fact that the appropriation for those departments is stated separately from that of members of the police department.

There are respects, of course, in which the relationship of a police officer to the City government differs from that of other employees. Police officers must meet qualifications and perform duties not required by other City employees. They are subject to disciplinary procedures that are not applicable to all other employees. The same may be said, however, of doctors, lawyers, nurses, architects and engineers employed by the City. In any respect that is relevant to this case, it cannot be said, as the plaintiffs would say, that the relationship of a police officer "is a very special one, a kind of super contract, if you will, in that the rights and duties of the parties are set by law and may not be changed by agreement but only by *affirmative* act on the part of the governmental authority."

Based upon the special relationship which the plaintiffs visualize, they assert a quasi-contractual relationship

to support a recovery. They say: "The relationship of the defendant, through its agent, the Police Superintendent, to its police officers, the plaintiffs, is a very special one, which if not a contract in the formal sense, can and does give rise to quasi-contractual or implied contractual obligations." The contention seems to be that the police officers relied upon representations of the Superintendent of Police and that a quasi-contractual relationship arose from those representations and that reliance. There are many difficulties with this contention. The Superintendent of Police did not fix the salary of police officers, and he was not authorized to make representations concerning the salary to be paid to them in the future. Any reliance upon his representations would have been unwarranted, but in this case there can have been no reliance, for the 1972 appropriation ordinance, adopted on December 10, 1971, gave notice that there would be no step or longevity increases in 1972.

The controlling legal principles are familiar. In *Gathemann v. City of Chicago* (1914), 263 Ill. 292, 298, the court said:

> "The contention of appellant that he is entitled to extra compensation because of the promise of the chairman of the finance committee cannot be sustained. Promises to pay a municipal officer an extra fee or sum beyond that fixed by law are not binding upon the municipality, even though he rendered the services and exercised a greater degree of diligence than could legally have been required of him. 1 Dillon on Mun. Corp. (5th ed.) sec. 427; *City of Decatur v. Vermillion, supra* [77 Ill. 315]; *May v. City of Chicago, supra* [222 Ill. 595].
>
> A further reason exists why appellant cannot recover in this case. The record shows that no appropriation for the appellant's overtime work as foreman was made. It was impossible, there-

> fore, for city officials to create a liability against the city for that work. *May v. City of Chicago, supra,* and cases cited."

Under section 8—1—7 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 8—1—7), any contract made without a prior appropriation is null and void. There can be no equitable estoppel because there was no justified reliance upon the part of the plaintiffs. (*Levin v. Civil Service Com. of Cook County* (1972), 52 Ill.2d 516, 524-5.) Under the settled law of this State a public employee does not have a property interest in the continuance of any specific rate or method of compensation. *Gathemann v. City of Chicago* (1914), 263 Ill. 292.

The judgment of the circuit court of Cook County is reversed and the cause is remanded to that court with directions to dismiss the action.

*Reversed and remanded, with directions.*