K. W. GARDNER, for himself and others similarly situated, Plaintiff and Appellant,

v.

DAVIS COUNTY, etc., Defendant and Respondent,

Davis County Medical Association, Amicus Curiae.

No. 13524.

Supreme Court of Utah.

June 18, 1974.

———◆———

David B. Havas, and Pete N. Vlahos, Vlahos & Gale, Ogden, for plaintiff and appellant.

Bennett P. Peterson, Davis County Atty., Farmington, W. Robert Wright, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for Davis County Medical Association.

CROCKETT, Justice:

Plaintiff K. W. Gardner, as a taxpayer, for himself and others similarly situated, sued to enjoin the Davis County Commission from declaring surplus and selling two parcels of real property which had been purchased as sites for public hospitals. From a refusal to grant the injunction, plaintiff appeals.

Pursuant to regular procedure and a resolution adopted by the County Commission, at a bond election held on June 4, 1968, the voters of Davis County by majority vote approved the following proposition:

Shall Davis County, Utah, incur a debt and issue General Obligation Bonds to the amount of $5,750,000.00 to mature serially in not more than 35 years from their date or dates and to bear interest at a rate, or rates, not in excess of 6 percent per annum, for the purpose of paying *part of the cost* of erecting hospital facilities in and for Davis County, including the acquisition of suitable sites therefor and all necessary furnishings and equipment therefor?

The announced plan was that the money raised by the proposed bond issue would partially pay for the hospital facilities. It was confidently expected that federal funds from the Hill-Burton program would provide the necessary balance. The Commission had issued and sold the authorized bonds and had purchased two sites, one in the north end and one in the south end of the County, when an unanticipated reduction in funds available in the federal Hill-Burton program effectively prevented the carrying out of the plan for building the hospitals as projected.

After this impasse developed, the Commission considered alternative methods of financing, and of obtaining hospital facilities for Davis County. In 1972 it decided upon a different plan, and contracted with two private corporations for construction of hospital facilities, one in each end of the county. Thereafter the Commission declared surplus the two sites it had purchased, and proposed to sell them through regular bidding procedures as provided by law.[1] The money was to be used for the purpose of paying accrued interest and retiring the issued bonds.

Prior to the date set for the sale the plaintiff brought this action to prevent it. After a plenary hearing thereon, the district court found that the action of the County Commission in the declaration of the lands as surplus and the proposed sale thereof was in accordance with law, and within its prerogatives.

The plaintiff raises no question, and there can be no doubt about the au-

1. Sec. 17–5–48, U.C.A.1953.

thority of the County Commission to take any reasonable and appropriate measures to preserve the health of the inhabitants of the County [2] nor that this includes the providing of hospital facilities.[3] The plaintiff's contention goes beyond those propositions: he argues that the announcement of the plan by the County Commission and the holding of the bond election constituted in effect an offer; and that the approval by the voters was in effect an acceptance of that offer, which imposed upon the Commission a binding mandate to go forward and build the public hospitals.

The powers and duties of counties and their boards of commissioners, are set forth in Title 17, U.C.A.1953. Section 17–4–1 provides that counties are, "bodies corporate and politic, and as such have the powers specified in this title and such other powers *as are necessarily implied.*"; Section 17–4–3 gives counties the power "to manage and dispose of its property as the interests of its inhabitants may require."; Section 17–5–48 allows the commission to sell surplus property; and Section 17–12–1 allows county commissions to contract for a bonded indebtedness and requires that revenues derived from bond sales "shall be applied to the purpose or purposes specified in the order of the board [county commission] and no other."

On a number of occasions this court has spoken concerning the powers of political subdivisions of this state. A comparatively recent one is Cottonwood City Electors v. Salt Lake County, etc.[4] Therein the plaintiffs failed to persuade the court that the County Commission should be compelled to grant incorporation of a town. We pointed out the practical necessity of recognizing the authority and the discretion essential for the County Commission to fulfill its responsibility of governing the county in the best interest and the general welfare of its citizens. In order to accomplish that objective it has such powers as are specifically set forth, and those which are reasonably and necessarily implied; and coupled therewith, it must necessarily be allowed a reasonable latitude of judgment and discretion.[5]

To be considered in connection with the Commission's discretion, and having a significant bearing on the problem here involved, is the fact that the Municipal Bond Act does not dictate that the Commission *shall* issue the bonds. Section 11–14–13, U.C.A.1953, provides that if the bond election is successful the Commission *"may* proceed to issue the bonds voted at the election." That wording clearly denotes a discretionary power and correlates with the idea of recognizing that a governing body should have some flexibility in planning for contingencies and adapting to changes in circumstances. The logical conclusion from all of the foregoing is that what the plaintiff claims was a "mandate" upon the Commission by the vote of the electorate actually amounted only to an authorization to issue bonds and to spend the funds realized therefrom for the purpose indicated.

Consistent with what has been said above, when it developed that sufficient federal funds were not available, it was the responsibility of the Commission to make the decision as to what should be done about the project, including its abandonment, if it thought that was the wise and necessary course. Fortunately, there came into being what, in the Commission's judgment, was a desirable alternative: of having private ventures provide the hospital facilities. Inasmuch as the purpose for which the lands in question were purchased had failed, it was the prerogative of the

---

2. Sec. 17–5–49, U.C.A.1953.

3. Sec. 17–5–62, U.C.A.1953.

4. 28 Utah 2d 121, 123, 499 P.2d 270; See also Schulte v. Salt Lake City, 79 Utah 292, 10 P. 2d 625, and Clayton v. Salt Lake City, 15 Utah 2d 57, 59, 387 P.2d 93.

5. Ibid.; and see language of Sec. 17–4–1, U.C.A.1953, quoted herein.

Commission to declare them surplus and dispose of them to the highest bidder as provided by law.[6]

██ We comment briefly on what strikes us as a novel contention made by the plaintiff: that inasmuch as the Commission had issued and sold the bonds for the announced purpose of building a public hospital, under the doctrine known as "cy pres," it should be obliged to carry out the plan in some manner. That French term in this context translates to mean "as near to" or "as near as may be." It is a doctrine that is sometimes invoked where there has been a gift or bequest for a charitable purpose, which for some reason cannot be literally carried out, and something closely analogous is done which comports with and fulfills what appears to be the donor's intention and purpose.[7] We have not been cited to, nor have we found any authority or precedent for applying that doctrine to the use of public funds in situations such as that now before us; and we can see no reason to do so.[8]

██ Reverting to the main basis for our decision: as will be seen from the authorities cited herein, the courts do not interfere with discretionary actions of the Commission except for some impelling cause: such as that there has been dishonesty, fraud or collusion, or lack of good faith, or that its action was so wholly unreasonable or unjust as to be regarded as arbitrary or capricious.[9] It has not been made to appear that any of such circumstances existed here. Therefore we can see no basis upon which to disagree with the trial court's refusal to interfere with the Commission's proceeding to sell the two pieces of property in question in the manner authorized by law. [All emphasis added.]

Affirmed. Costs to defendant (respondent).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

6. Sec. 17–5–48, U.C.A.1953.

7. See 14 C.J.S. Charities § 52, pp. 512, 514.

8. See City and County of Denver v. Currigan, Colo., 362 P.2d 1060.

9. See cases in footnote 4, supra.