Brian L. WEESE, Curtis C. Anderson, Robert S. Davis, Catherine Lynch, Phyllis Gleave, and David Bremer, Plaintiffs and Appellants,

v.

**DAVIS COUNTY COMMISSION,**
Defendant and Appellee.

No. 900374.

Supreme Court of Utah.

June 2, 1992.

Jack C. Helgesen, Ogden, for plaintiffs and appellants.

Melvin C. Wilson, Gerald Hess, Farmington, for defendant and appellee.

**HALL, Chief Justice:**

Plaintiffs, six employees of Davis County during 1987 and 1988, appeal the decision of the Second Judicial District Court granting defendant Davis County Commission's motion for summary judgment and dismissing plaintiffs' claims. We affirm.

The parties do not dispute the following material facts. During 1987, Davis County maintained a policy of awarding a 3.45 percent merit pay increase to any employee who satisfactorily completed a one-year performance plan. This policy was reflected in the county's Policies and Procedures Manual. The beginning of the Policies and Procedures Manual contained the following disclaimer:

> No contract exists between Davis County and its employees with respect to salary ranges, movement within salary ranges, or employee benefits or any other aspects of employment. These may change as a result of salary surveys, job analysis, or changes in County policies and procedures.

Under the policy as outlined in the manual, each employee had a separate employment year which began on the anniversary of his or her hiring date. On each anniversary, the county evaluated the employee according to a performance plan created

the previous year. Those employees whose performance rated satisfactory or above qualified for merit pay increases.

As part of its annual budget plan for 1988, the Davis County Commission ("the Commission") voted to freeze all merit increases for county employees effective January 1, 1988. In lieu of merit increases, those employees who satisfactorily completed their performance plans received a one-time bonus on their anniversary dates. The six employees involved in this suit accepted those bonuses.

Plaintiffs filed suit against the Commission on September 8, 1988, alleging that the freeze on merit pay increases violated their contractual right to the increases which they earned as a result of satisfactorily completing their performance plans. On May 30, 1989, the trial court granted the Commission's motion for summary judgment, dismissing plaintiffs' claims. The court based its decision on the disclaimer language in the beginning of the Policies and Procedures Manual. In its conclusions of law, the trial court held that (1) plaintiffs did not have a binding contract with Davis County; (2) plaintiffs had no vested rights to salary increases and the Commission had the power to freeze all merit increases during 1988; and (3) plaintiffs could have no reasonable expectation of continued merit increases so as to create an estoppel prohibiting the Commission from modifying merit increases. Plaintiffs thereafter filed this appeal.

A grant of summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] On appeal from summary judgment, this court resolves only legal issues; we do not defer to the trial court's rulings. We determine whether the trial court erred in applying the governing law and whether the trial court correctly held that no genu-

---

**1.** Utah R.Civ.P. 56(c); *Clover v. Snowbird Ski Resort, Inc.,* 808 P.2d 1037, 1039–40 (Utah 1991); *Provo City Corp. v. State,* 795 P.2d 1120, 1121 (Utah 1990); *Utah State Coalition of Senior Citizens v. Utah Power & Light Co.,* 776 P.2d 632, 634 (Utah 1989).

ine issue of fact was in dispute.[2] Plaintiffs do not claim that any genuine dispute of fact precluded summary judgment. Therefore, we review the legal decision of the trial court for correctness.

Plaintiffs claim that general contract law compels the county to fulfill its promise of a 3.45 percent merit increase on successful completion of their 1987 performance appraisal plans. Essentially, plaintiffs claim that the county, through its Policies and Procedures Manual, made them an implied offer for the merit increase if they successfully completed their performance plans. They claim that their partial performance of the plans made the county's offer an irrevocable implied contract.[3] Therefore, they claim that the county is contractually bound to pay them the merit increases.

The trial court ruled that no contract existed between the county and plaintiffs because they could have no reasonable reliance on the offer allegedly made by the county. The trial court based its ruling on the disclaimer language placed at the front of the Policies and Procedures Manual. We have previously held that disclaimer language in an employment manual may defeat a claim of implied contract brought in reliance on that manual.[4] However, in this case we need not decide the effect of the disclaimer language or the validity of plaintiffs' claim that the Policies and Procedures Manual created an implied contract for the increases, because we may affirm the trial court's decision granting defendant summary judgment on other proper grounds.[5]

Any contract, express or implied, between plaintiffs and the county is subject to the statutory and constitutional limitations on the county as a governing body.[6] The county only has those rights and powers granted it by the Utah Constitution and statutes or those implied as a necessary means to accomplish them.[7] Any act by the county in excess of this authority or forbidden by the Utah Constitution is null and void as an ultra vires act.[8]

One of the limitations placed on counties and all government entities in this state is the state constitutional limitation on indebtedness. Article XIV, section 3 of the Utah Constitution prohibits a governmental entity from creating or incurring any debt in excess of tax revenues for the current year.[9] This article requires government entities to operate on a "pay as you go" basis.[10] It requires that the county keep its expenses for a given year within the income and revenue provided for that year;

2. *Hamblin v. City of Clearfield,* 795 P.2d 1133, 1135 (Utah 1990); *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989).

3. Restatement (Second) of Contracts § 45 (1979). *See generally Johnson v. Morton Thiokol,* 818 P.2d 997, 1000–02 (Utah 1991) (regarding nature of unilateral contract in employment context).

4. *See Johnson v. Morton Thiokol,* 818 P.2d at 1002–03 & n. 28.

5. *See Buehner Block Co. v. UWC Assoc.,* 752 P.2d 892, 895 (Utah 1988); *City Elec. v. Industrial Indem. Co.,* 683 P.2d 1053, 1060 (Utah 1984).

6. *See Thatcher Chemical Co. v. Salt Lake City,* 21 Utah 2d 355, 445 P.2d 769, 771 (1968); *State v. Spring City,* 123 Utah 471, 260 P.2d 527, 529–30 (1953); *Moe v. Millard County School Dist.,* 54 Utah 144, 179 P. 980, 982 (1919); *Pardee v. Salt Lake County,* 39 Utah 482, 118 P. 122, 127 (1913).

7. *See, e.g.,* Utah Code Ann. § 17–4–1; *Gardner v. Davis County,* 523 P.2d 865, 867 (Utah 1974);

*Cottonwood City Electors v. Salt Lake County Bd. of Comm'rs,* 28 Utah 2d 121, 499 P.2d 270, 271 (1972); *Lund v. Salt Lake County,* 58 Utah 546, 200 P. 510, 516 (1921); *Daggett v. Lynch,* 18 Utah 49, 54 P. 1095, 1096 (1898); *Keeling v. City of Grand Junction,* 689 P.2d 679, 680 (Colo.Ct. App.1984).

8. *See Lund v. Salt Lake County,* 200 P. at 516; *Moe v. Millard County,* 179 P. at 982; *Daggett v. Lynch,* 54 P. at 1096.

9. Article XIV, section 3 states:

No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district therein, or by any city, town or village, or any subdivision thereof in this State; unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt.

10. *State v. Spring City,* 260 P.2d at 529.

it cannot incur debts to be met by revenues arising in years to come.[11] The provision prohibited the county from incurring debt in 1987 unless that debt would be paid from taxes and revenue collected in 1987. Any debts the county incurred in 1987 which were to be paid from 1988 revenues were therefore null and void.[12]

■ The constitutional provision contained in article XIV, section 3 was enacted as a protection for the taxpayers against an abuse of their credit.[13] The underlying principle of article XIV is that the Commission cannot, without voter approval, obligate future tax revenues because it would limit the ability of future county commissions to fully exercise their legislative authority.[14] Other states recognize that setting the salary of public employees is a legislative determination.[15] This includes the power to raise and lower salaries during the continuance of an employee's term or period of employment.[16] Appropriations for salaries of public employees fall squarely within the purposes of the constitutional provision. Therefore, the alleged contract promising county employees salary increases in the following year would violate the provisions and purpose of article XIV.

■ Plaintiffs alternatively claim that the county should be estopped from denying the merit increases and that equity should require that the increases be paid. This theory fails on two grounds. First, plaintiffs have not established the fundamental elements of an estoppel claim.[17] At the least, they have not established that they reasonably relied on the implied promises allegedly contained in the Policies and Procedures Manual. The trial court found that any reliance on the manual was unreasonable because the manual explicitly contained a disclaimer that it did not create a contract for salary with the county. Further, the promise itself exceeded the county's authority. One who contracts with a governing body is presumed to know the statutory and constitutional limits of its contracting authority.[18] Therefore, there could be no reasonable reliance on the county's alleged promise for increases.

■ Second, Utah recognizes the general rule that estoppel may not be as-

---

11. *Id.* at 529–30; *Fritsch v. Board of Comm'rs of Salt Lake County,* 15 Utah 83, 47 P. 1026, 1028 (1897).

12. *See Moe v. Millard County School Dist.,* 179 P. at 982; *Pardee v. Salt Lake County,* 118 P. at 124, 127; *see also Chicago Patrolmen's Assoc. v. City of Chicago,* 56 Ill.2d 503, 309 N.E.2d 3, 6, *cert. denied,* 419 U.S. 839, 95 S.Ct. 68, 42 L.Ed.2d 66 (1974).

13. *State v. Spring City,* 260 P.2d at 529; *see Wadsworth v. Santaquin City,* 83 Utah 321, 28 P.2d 161, 169–70 (1933).

14. *See Spring City,* 260 P.2d at 529. Although without application here, various means have been devised to avoid the debt limitations imposed by article XIV. Specifically as a means of financing needed capital improvement, special funds and special districts have been resorted to, both of which are quasi-municipal entities recognized as exempt from the debt limitations of article XIV. See *Municipal Building Authority v. Lowder,* 711 P.2d 273, 277 (Utah 1985).

15. C. Dallas Sands & Michael E. Libonati, 2 *Local Government Law* § 10.26 (1981).

16. *Id.; see also Foley v. Consolidated City of Indianapolis,* 421 N.E.2d 1160, 1163–64 (Ind.Ct.

App.1981); *Scime v. County Legislature of Erie County,* 90 Misc.2d 764, 395 N.Y.S.2d 952, 955 (1977).

17. A party claiming promissory estoppel must establish the following: (1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person. *Prows v. State,* 822 P.2d 764, 768–69 (Utah 1991); *Topik v. Thurber,* 739 P.2d 1101, 1103 (Utah 1987).

18. *Thatcher Chemical Co. v. Salt Lake City Corp.,* 445 P.2d at 771. In *Thatcher,* we declined to recognize a contract between a chemical corporation and Salt Lake City, because any agreement between the two was not approved by the legislating body of the city. The language of *Thatcher* relates to dealings with city officials, but the concept is equally applicable to those contracting with counties:

> One who deals with a municipal corporation does so at his peril. He is presumed to know the municipal ordinances controlling the administration of public business and the limitations on the powers and authority of the City officers he is dealing with.

*Id.* (footnote omitted).

serted against a governmental entity.[19] This rule safeguards the interests of the public in the orderly operation of government against the possibility of unscrupulous persons circumventing the procedures and protections of the law and then suing for the value of services rendered in violation.[20] Absent some compelling cause, such as dishonesty, fraud, or collusion on the part of a county commission, courts generally do not interfere with the legislative actions of a county commission.[21] This includes interference by creating debt through theories of estoppel, particularly when the debt is in excess of the county's constitutional authority.

Because the county was constitutionally barred from contracting with the employees for a merit increase in future years, any promise or contract for such an increase is null and void. Further, any reliance on promises made by the county was unreasonable and could not form the basis for promissory estoppel. The order of the trial court granting defendant's summary judgment motion is affirmed.

DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result on the ground that the disclaimer in the manual prevented any contract from arising.

STEWART, Justice: (Concurring).

I concur generally in the majority opinion, but write to clarify two points. First, the majority opinion states that a county only has "those rights and powers granted it by the Utah Constitution and statutes or those implied as a necessary means to accomplish them" and that an act by the county "in excess of [that] authority or forbidden by the Utah Constitution is null and void as an ultra vires act." While I agree with that statement, especially in the context of the facts of the case, I think it important to clarify that powers delegated to local governments are not to be strictly construed. In *State v. Hutchinson,* 624 P.2d 1116 (Utah 1980), we rejected Dillon's Rule, which over the years had hamstrung local government by requiring strict construction of the powers delegated to local governments. Specifically, we held that the rule of strict construction could not be used to restrict a legislative grant of the general welfare power to a county or to prevent a county from "using reasonable means to implement specific grants of authority." *Id.* at 1127.

My second point is that even though it is generally stated that estoppel may not be asserted against a governmental entity, this Court has recognized exceptions to that general rule, particularly when "it is plainly apparent that its application would result in injustice, and there would be no substantial adverse effect on public policy...." *Utah State Univ. of Agriculture and Applied Science v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982); *see also Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689 (Utah 1979) (if necessary to prevent manifest injustice and will not impair the exercise of governmental powers). In this case, however, I do not believe that estoppel can be used legitimately against the county.

**19.** *Prows v. State,* 822 P.2d at 769; *Utah State Univ. v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982).

**20.** *See* Prows, 822 P.2d at 769; *Utah State Univ.,* 646 P.2d at 718.

**21.** *Gardner v. Davis County,* 523 P.2d at 868; *Cottonwood City Electors v. Salt Lake County Bd. of Comm'rs,* 499 P.2d at 272.